1  Jaime Melendez, PRO SE
   44206 16ᵗʰ St E
2  Lancaster, CA. 93535
   323-537-3636
3  JMelendez3000@Gmail.com

4

5

6              **IN THE UNITED STATES COURT OF APPEALS**

7                     **FOR THE NINTH CIRCUIT**

8

9

10        **ON APPEAL FROM THE UNITED STATES DISTRICT COURT**

11            **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

12                 **NO. 2:25-CV-09814-FMO-PVCX**

13

14

15

16

17  JAIME MELENDEZ,                          | Case No.:

18          Plaintiff,

19  vs.                                       | **APPELLANT JAIME MELENDEZ'S**
                                              | **EMERGENCY MOTION FOR INJUNCTION**
20  DEPARTMENT OF HOMELAND SECURITY, ET AL., | **PENDING APPEAL UNDER CIRCUIT RULE 27-3**

21          Defendant

22                                            | **EMERGENCY MOTION UNDER CIRCUIT RULE**
                                              | **27-3 – RELIEF NEEDED BY NOVEMBER 2, 2025**
23

24

25

26

27

28  **APPELLANT JAIME MELENDEZ'S EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL**
    **UNDER CIRCUIT RULE 27-3 - 1**

**EXHIBIT A:** Original complaint filed with the Federal District Court -Central California which includes TRO application.

**EXHIBIT B:** 1st Dismissal of case by the federal district court -central California

**EXHIBIT C:** Motion for reconsideration submitted by Plaintiff

**EXHIBIT D:** 2nd dismissal of case by federal district court- central California

1
2
3
4

5   **CIRCUIT RULE 27-3 CERTIFICATE**

6   1.  **Counsel/Parties:**

7       ○  **Appellant:** Jaime Melendez, Pro Se, 44206 16th St E. Lancaster, CA. 93535

8       ○  **Appellees (Federal):** Counsel for Department of Homeland Security, et al., c/o U.S. Attorney's

9           Office, Central District of California, Civil Division, 300 N. Los Angeles Street, Suite 7516, Los

10          Angeles, CA 90012, USACAC.CV-CivilRights@usdoj.gov

11          Counsel for TransCor, Inc. / CoreCivic, Inc. (e.g., Randall Milks, Mary Ann Jackson, Emails

12          previously used: randall.milks@transcor.com, maryann.jackson@transcor.com,

13          cole.carter@transcor.com, generalcounsel@transcor.com, curtiss.sullivan@transcor.com,

14          anthony.minnigan@transcor.com . Also, registered agent of service as stated in the California

15          Secretary of State official webpage: CT Corporation System, 330 N. Brand Blvd. Suite 700.

16          Glendale, CA. 91203.

17

18  **Nature of Emergency:** Appellant seeks an emergency injunction because the specific job opportunity underlying

19  this appeal will be permanently lost if Appellant cannot attend mandatory training beginning **November 2, 2025**

20  Appellee TransCor has confirmed the position will not be held open . This constitutes irreparable harm.

21

22  **Reason for Delay:** This motion is filed immediately following the District Court's denial of Appellant's Motion for

23  Reconsideration on October 21, 2025, which finalized the dismissal of the case. This is the earliest Appellant could

24  seek appellate relief after exhausting remedies in the District Court.

25

26  **Notice to Parties:** Appellant provided notice of intent to file this emergency motion to counsel for Appellees via

27  email and personal delivery on 10/22/2025. Plaintiff has sent many emails but all have been ignored by both federal

28  **APPELLANT JAIME MELENDEZ'S EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL
    UNDER CIRCUIT RULE 27-3 - 2**

defendants and corporate defendants. Service of this motion is being made concurrently via personal delivery to the above stated addresses and emails. Appellant understands Rule 27-3 requires notification efforts, distinguishing this from ex parte practice. Plaintiff would like to make this court aware that defendants have not responded once to any court filing despite numerous emails and personal delivery of documents.

**Relief Sought Below:** Appellant sought a Temporary Restraining Order in the District Court seeking substantially the same relief . The District Court dismissed the case before ruling on the TRO (temporary restraining order), effectively denying it, and subsequently denied Appellant's motion for reconsideration. Seeking relief first in the District Court is no longer practicable given the dismissal and the imminent November 2 deadline.

**INTRODUCTION**

Appellant Jaime Melendez, proceeding pro se, respectfully moves this Court for an emergency injunction pending appeal pursuant to Federal Rule of Appellate Procedure (FRAP) 8 and Ninth Circuit Rule 27-3. Filing under Rule 27-3 signals the urgency of this matter, as Appellant requires relief before November 2, 2025, to prevent irreparable harm. Appellant seeks an order requiring Appellees Department of Homeland Security (DHS) and U.S. Immigration and Customs Enforcement (ICE) to hold in abeyance their October 2, 2025 unsuitability determination, and requiring Appellees TransCor, Inc. and CoreCivic, Inc. (TransCor) to reinstate their offer of employment and permit Appellant to begin mandatory training on November 2, 2025 . Given the imminent training start date, Appellant requests expedited consideration of this motion, including an order requiring any response from Appellees to be filed by **October 27, 2025** consistent with the Court's authority under FRAP 27(a)(3)(A). Appellant is likely to succeed on the merits of his appeal challenging the District Court's dismissal, faces imminent irreparable harm, the balance of equities favors relief, and an injunction serves the public interest.

**JURISDICTION**

The District Court had subject-matter jurisdiction under 28 U.S.C. § 1331. This Court has jurisdiction over the appeal from the District Court's final order of dismissal and order denying reconsideration under 28 U.S.C. § 1291.

**APPELLANT JAIME MELENDEZ'S EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL UNDER CIRCUIT RULE 27-3 - 3**

1  The order denying reconsideration was entered on October 21, 2025. Appellant filed a timely Notice of Appeal on
2  10/22/2025.

3
4
5

6  **ISSUES PRESENTED**

7    1. Whether Appellant has shown a sufficient likelihood of success on the merits of his appeal challenging the
8       District Court's dismissal of his APA, Title VII, and Due Process claims.

9    2. Whether Appellant will suffer irreparable harm—the permanent loss of a specific job opportunity—if an
10      injunction pending appeal is not granted before November 2, 2025.

11   3. Whether the balance of equities tips sharply in Appellant's favor.

12   4. Whether granting an injunction pending appeal serves the public interest.

13 **STATEMENT OF THE CASE**

14   1. **Background and Job Offer**: The plaintiff received a job offer from TransCor a private company who
15      contracts with the federal government. The Plaintiff has been a bus driver for over 20 years with experience
16      driving schools buses, coach buses, etc., TransCor offered a job to Plaintiff as a transportation officer in
17      which he would drive buses carrying inmates from one facility to another. Because TransCor contracts with
18      the government, the Plaintiff was required to undergo and pass a security clearance conducted by ICE, if
19      unsuccessful, then Plaintiff would not be able to work for TranscCor. The offer included a specific start
20      date.

21   2. **ICE Denial Based on Polygraph**: ICE denied the clearance solely based on a 2021 polygraph examination
22      where in 2021 Plaintiff did not pass the polygraph during a job application (customs officer) process with
23      Customs and Border Protection. The failed polygraph examination was labeled by ICE as "Dishonest
24      Conduct." However, This decision conflicts with U.S. Customs and Border Protection's (CBP) own policy,
25      which limits the use of polygraph results to a two-year period . (https://careers.cbp.gov/s/applicant-
26      resources/polygraph) , 6 USCS § 221, 29 USCS § 2007.

27

28 **APPELLANT JAIME MELENDEZ'S EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL**
    **UNDER CIRCUIT RULE 27-3 - 4**

3. **Attempts to Resolve with TransCor**: The plaintiff attempted to resolve the issue with TransCor, the employer, but TransCor stated that the job would not be held for the plaintiff because Plaintiff needed the security clearance, however, the company stated they would gladly accept the applicant if he ever clears the issue with ICE.

4. **Procedural History in District Court**: The plaintiff filed a case in the district court, which culminated in the dismissal of the case and the denial of a motion for reconsideration. The dismissal was likely based on procedural grounds, as failure to comply with local rules or heightened pleading standards.

5. **Declaration and Exhibits**: The plaintiff referenced their declaration and attached exhibits to support their motion, but the court's decision suggests that these were insufficient to overcome the procedural or substantive deficiencies in the case.

The Ninth Circuit has previously addressed issues related to the admissibility and use of polygraph results. For example, polygraph results cannot be the sole basis for adverse actions unless supported by additional evidence . 29 USCS § 2007. Furthermore, polygraph evidence is generally inadmissible unless it is an operative fact or introduced for a specific purpose, such as establishing the basis of a cause of action . Brown v. Darcy, 783 F.2d 1389, United States v. Bowen, 857 F.2d 1337. These principles may have influenced the court's analysis in this case.

**ARGUMENT**

**I. Standard for Injunction Pending Appeal**

A party seeking a temporary restraining order must establish that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Plaintiff satisfies all four factors.

**II. Appellant is Likely to Succeed on the Merits of the Appeal.**

    **A. The District Court Erred in Dismissing the APA Claim.**

The issue at hand is whether the Civil Service Reform Act (CSRA) precludes jurisdiction in a case involving the denial of ICE clearance based on a polygraph test. The plaintiff

**APPELLANT JAIME MELENDEZ'S EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL UNDER CIRCUIT RULE 27-3 - 5**

argues that jurisdiction is not precluded because (1) contractor suitability determinations differ

from employee personnel actions, (2) the lack of a Merit Systems Protection Board (MSPB)

remedy makes district court review available under 5 U.S.C. 704, and (3) procedural and

constitutional claims may serve as exceptions to the preclusion doctrine established in *Dep't of the*

*Navy v. Egan, 484 U.S. 518* and the CSRA. This argument will demonstrate why the CSRA does

not bar jurisdiction in this case.

1. **Contractor Suitability Determinations Differ from Employee Personnel Actions**

The CSRA provides a comprehensive framework for addressing personnel

actions involving federal employees, including adverse actions and prohibited personnel practices

AFGE, AFL-CIO v. Trump, 139 F.4th 1020, Elgin v. Dep't of the Treasury, 567 U.S. 1. However,

the framework primarily applies to federal employees and does not explicitly address contractor

suitability determinations. The Ninth Circuit has recognized that the CSRA's preclusive effect is

limited to personnel actions explicitly covered by the statute Elgin v. Dep't of the Treasury, 567

U.S. 1.

In this case, the denial of ICE clearance based on a polygraph test may not constitute a "personnel

action" as defined under the CSRA. The statute broadly defines personnel actions but does not

explicitly include contractor suitability determinations Saul v. United States, 928 F.2d 829.

Therefore, the plaintiff's claim may fall outside the scope of the CSRA, allowing for judicial

review in district court.

2. **Lack of MSPB Remedy Makes District Court Review Available Under 5 U.S.C. 704**

The CSRA establishes the MSPB as the primary forum for resolving disputes

involving federal personnel actions AFGE, AFL-CIO v. Trump, 139 F.4th 1020, Elgin v. Dep't of

the Treasury, 567 U.S. 1. However, when the MSPB lacks jurisdiction or cannot provide a

remedy, judicial review may be available under the Administrative Procedure Act (APA), 5 U.S.C

704. The APA allows for judicial review of final agency actions for which there is no other

adequate remedy in a court 5 USCS § 7703.

**APPELLANT JAIME MELENDEZ'S EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL UNDER CIRCUIT RULE 27-3 - 6**

In *Dep't of the Navy v. Egan, 484 U.S. 518*, the Supreme Court held that the MSPB lacks authority to review security clearance decisions Dorfmont v. Brown, 913 F.2d 1399. This limitation on MSPB jurisdiction leaves individuals like the plaintiff without an administrative remedy for challenging the denial of clearance. As a result, district court review under 5 U.S.C. 704 is appropriate to ensure that the plaintiff has access to a forum for addressing their claims.

**3. Procedural and Constitutional Claims as Exceptions to Egan/CSRA Preclusion Doctrine**

The preclusion doctrine established in *Egan* and the CSRA is not absolute. Courts have recognized that procedural and constitutional claims may serve as exceptions to the doctrine. For example, in *Brazil v. United States Dep't of the Navy, 66 F.3d 193*, the Ninth Circuit held that claims involving procedural irregularities or constitutional violations are not necessarily precluded by *Egan* Bates v. Metro. Interpreters & Translators, Inc., 742 Fed. Appx. 268. Similarly, the court in *Brazil v. United States Dep't of the Navy, 66 F.3d 193* acknowledged that national security concerns do not automatically bar judicial review of all claims related to security clearance decisions Panoke v. United States Army Military Police Brigade, 307 Fed. Appx. 54.

In this case, the plaintiff alleges procedural and constitutional violations related to the administration of the polygraph test and the denial of clearance. These claims fall outside the scope of the CSRA's preclusion doctrine and warrant judicial review to ensure compliance with constitutional and procedural safeguards.

The CSRA does not preclude jurisdiction in this case for three reasons. First, contractor suitability determinations differ from employee personnel actions and may fall outside the scope of the CSRA. Second, the lack of an MSPB remedy makes district court review available under 5 U.S.C. 704. Third, procedural and constitutional claims serve as exceptions to the preclusion doctrine established in *Egan* and the CSRA. Accordingly, the court should find that it has jurisdiction to review the plaintiff's claims.

1   The district court dismissed this action at screening, holding that the Civil Service Reform Act (CSRA) categorically

2   bars APA review of ICE's final "unsuitable" determination that blocked Appellant's contingent hire by a private

3   contractor and that Appellant stated no Title VII claim against the contractor for ratifying the barrier, and further

4   rejecting a procedural due process theory. That was error. First, the challenged action is a final suitability

5   adjudication by DHS/ICE directed to a non-federal applicant seeking placement with a private contractor; it is not a

6   CSRA "personnel action" within the CSRA's remedial scheme, and the APA supplies jurisdiction and a cause of

7   action. The agency's letter expressly declared a final determination, not subject to appeal, under 5 C.F.R. part 731,

8   based solely on an aged polygraph result re-labeled as "Dishonest Conduct," without applying mandatory mitigating

9   factors—an archetypal arbitrary-and-capricious action suitable for APA review. Second, Appellant plausibly alleged

10  that the corporate appellees ratified and acquiesced in discriminatory barriers to employment after notice, supporting

11  a Title VII claim at the pleading stage. Third, the due process claim should not have been foreclosed at screening

12  because the court relied on CSRA preemption that does not fit these facts and because Appellant alleged a final,

13  reputation-stigmatizing determination that foreclosed a specific opportunity. The Court should reverse and remand.

14  **JURISDICTIONAL STATEMENT** The district court entered final judgment dismissing the action without

15  prejudice on October 16, 2025, and denied reconsideration on October 21, 2025. Appellant timely filed a notice of

16  appeal. 28 U.S.C. § 1291 provides appellate jurisdiction.

17  **ISSUES PRESENTED**

18      1.  Whether the CSRA precludes APA review where DHS/ICE issued a final, non-appealable suitability

19          determination under 5 C.F.R. part 731 directed at a non-federal applicant for a contractor position, not a

20          federal "employee" or "applicant for employment," and where the decision is otherwise final agency

21          action.

22      2.  Whether the complaint states a plausible Title VII claim that TransCor/CoreCivic ratified or acquiesced in

23          discriminatory barriers to employment after notice.

24      3.  Whether the court erred in foreclosing a procedural due process claim at screening based on CSRA

25          preemption and absence of a protected interest, where Appellant alleged a final, public, stigmatizing

26          determination that foreclosed a concrete opportunity and was issued without required regulatory

27          considerations.

28  **APPELLANT JAIME MELENDEZ'S EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL UNDER CIRCUIT RULE 27-3 - 8**

**STATEMENT OF THE CASE**

- Appellant accepted a conditional offer as a Transportation Officer with TransCor, a private contractor; the offer required an ICE clearance.

- On October 2, 2025, ICE issued a letter finding Appellant "unsuitable" due to "Dishonest Conduct," defined solely as a "Significant Response (Failed)" on a January 8, 2021 CBP polygraph; the letter stated it was a "final decision" "not subject to further appeal," issued "in accordance with 5 C.F.R. Part 731."

- Appellant sought reconsideration from ICE and asked TransCor/CoreCivic leadership to intervene; management declined and rescinded/declined to hold the position.

- The complaint alleged: (1) APA violation—arbitrary and capricious suitability adjudication; (2) Title VII violation—ratification/acquiescence by the corporate defendants. The pleadings and TRO materials detailed ICE's failure to consider mandatory mitigating factors under 5 C.F.R. § 731.202(c) and the irrational re-characterization of a polygraph result as "dishonest conduct."

- The district court dismissed, holding the CSRA precludes APA review and that Title VII ratification is not cognizable here, and later denied reconsideration and a newly raised due process theory.

**STANDARD OF REVIEW** De novo review applies to dismissals for lack of jurisdiction and failure to state a claim. Final agency action under the APA and preclusion are legal questions reviewed de novo.

**SUMMARY OF ARGUMENT**

- CSRA preclusion does not apply. Appellant is neither a federal "employee" nor an "applicant for employment" within the CSRA; the DHS/ICE suitability determination is a final agency action under the APA, expressly labeled final and non-appealable under part 731, and not reviewable in the MSPB. The district court's reliance on Blue v. Widnall's general proposition that APA review does not confer jurisdiction over federal personnel actions is misplaced where the action falls outside the CSRA scheme invoked by the court.

- The complaint plausibly states an APA claim: ICE reclassified a dated polygraph outcome as "Dishonest Conduct" without the required "whole-person" assessment and mandatory factors in § 731.202(c), contravening State Farm's requirement of reasoned decisionmaking.

**APPELLANT JAIME MELENDEZ'S EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL UNDER CIRCUIT RULE 27-3 - 9**

- The complaint plausibly states a Title VII claim against TransCor/CoreCivic: after notice of the alleged unlawful barrier, management refused corrective steps and rescinded/withheld the position, supporting ratification/acquiescence theories recognized in Ninth Circuit authority cited in the pleadings.

- The court prematurely rejected procedural due process. The claim was tethered to a final, stigmatizing government determination that foreclosed a concrete employment opportunity and allegedly ignored mandatory procedural factors, and the court's CSRA-preemption rationale does not fit a non-CSRA applicant. Remand is warranted to permit amendment.

## ARGUMENT

**I.** The CSRA Does Not Preclude APA Review of ICE's Final Suitability Determination For A Private-Contractor Position.

**A.** The action is not within the CSRA remedial framework invoked by the district court. The court concluded that Appellant's "exclusive remedy" is the CSRA and cited Blue v. Widnall for the proposition that the APA cannot be used to review "federal personnel actions." But the record shows ICE issued a final, non-appealable suitability decision under 5 C.F.R. part 731 to a non-federal applicant for a private-contractor position; the letter expressly foreclosed administrative appeal and did not route Appellant to MSPB. The government's own notice demonstrates the absence of an internal CSRA channel.

**B.** The letter is "final agency action" reviewable under the APA. The ICE letter consummated the agency's decision making and determined rights/obligations by blocking Appellant's placement; it declared finality and absence of further appeal. The complaint pleads review under 5 U.S.C. §§ 702, 706. Where no alternative statutory scheme affords review, the APA supplies it.

**II.** The Complaint States an APA Claim: The Decision Was Arbitrary And Capricious. The complaint and TRO papers identified two independent APA defects:

1. Mischaracterizing a polygraph output as "Dishonest Conduct" under part 731, without any volitional act by Appellant.

2. Failing to consider mandatory "additional considerations," including recency, nature/seriousness, and the whole-person record, in 5 C.F.R. § 731.202(c). The record alleges an aged, nearly five-year-old polygraph; even CBP allows reapplication after two years, underscoring the recency problem that ICE

**APPELLANT JAIME MELENDEZ'S EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL UNDER CIRCUIT RULE 27-3 - 10**

1  ignored. Under State Farm's standard, such failure to consider important aspects and to articulate a

2  rational connection requires setting aside the decision.

3  **III.** The Complaint Plausibly States A Title VII Claim Against TransCor/CoreCivic For Ratification/Acquiescence

4  In A Discriminatory Barrier. Appellant alleged he notified senior TransCor/CoreCivic officials, explained the legal

5  defects, requested intervention, and the company refused to act and rescinded/withheld the job, instead telling him to

6  reapply for "future opportunities." The pleading specifically invoked Ninth Circuit principles that an employer may

7  not ratify third-party discriminatory barriers and is liable when it acquiesces after notice. At minimum, these

8  allegations clear Rule 8.

9  The district court discounted the claim based on its reading of BNSF as an ADA case about candidate-paid MRIs.

10  But the complaint cited BNSF and related Ninth Circuit authority for the broader proposition that employers cannot

11  outsource discriminatory screening and may be liable when they ratify it—a theory sufficiently pled here. The

12  court's narrow reading of one case does not eliminate the pleaded ratification theory at the motion-to-dismiss stage.

13  **IV.** The Court Erred In Foreclosing Procedural Due Process At Screening. A. CSRA preemption does not bar a due

14  process claim here. The court relied on CSRA preemption of constitutional claims arising from "governmental

15  personnel actions." But Appellant was not a federal employee or CSRA-covered applicant; ICE's own letter

16  provided no CSRA avenue. The CSRA rationale therefore does not apply on these facts.

17  **B.** Appellant pled a stigma-plus deprivation tied to a concrete opportunity and the agency's failure to follow

18  mandatory procedures. The "Dishonest Conduct" finding tied to law-enforcement suitability, issued as final, is

19  stigmatizing and foreclosed Appellant's specific position beginning November 2, 2025; TransCor stated the

20  opportunity would not be held open. The complaint also alleges the agency failed to apply mandatory part 731

21  considerations. Dismissal without leave to amend at screening was error; at minimum, leave to amend should have

22  been granted to plead the due process claim.

23  **V.** At Minimum, Remand Is Required To Permit Amendment. The district court dismissed at inception and denied

24  reconsideration, despite detailed factual proffers and exhibits showing final agency action and plausible claims.

25  Where jurisdiction and claims turn on the nature of the agency action and the employment relationship, leave to

26  amend should have been granted.

27

28  **APPELLANT JAIME MELENDEZ'S EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL UNDER CIRCUIT RULE 27-3 - 11**

1         **LEGAL STANDARD FOR INJUNCTIVE RELIEF**

2         A party seeking a temporary restraining order must establish that (1) he is likely to succeed on the

3 merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips

4 in his favor, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20

5 (2008). Plaintiff satisfies all four factors.

6         **ARGUMENT**

7         **I. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS.**

8         **A. ICE's Unsuitability Determination Was Arbitrary and Capricious in Violation of the**

9 **APA.**

10         An agency action must be set aside if it is "arbitrary, capricious, an abuse of discretion, or

11 otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An action is arbitrary and capricious if the agency has

12 "entirely failed to consider an important aspect of the problem" or failed to articulate a "rational connection between

13 the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43

14 (1983).

15         ICE's decision fails this test. First, its conclusion that a polygraph result constitutes "Dishonest

16 Conduct" under 5 C.F.R. § 731.202 is irrational. Conduct requires a volitional act, not an involuntary physiological

17 response to a notoriously unreliable diagnostic tool. Second, the agency "entirely failed to consider an important

18 aspect of the problem" by ignoring the mandatory "additional considerations" outlined in its own regulations at 5

19 C.F.R. § 731.202(c). The agency gave dispositive weight to a single, nearly five-year-old event while ignoring the

20 overwhelming mitigating evidence of Plaintiff's honorable military service, advanced degrees, and unblemished

21 personal history. This failure to consider the "whole person" is a clear violation of the APA.

22         **B.** The Corporate Defendants Violated Title VII by Ratifying ICE's Unlawful Act.

23         An employer is liable under Title VII for the discriminatory acts of a third party if the employer

24 "ratifies or acquiesces in the [unlawful conduct] by not taking immediate and/or corrective actions when it knew or

25 should have known of the conduct." *Folkerson v. Circus Circus Enterprises, Inc.*, 107 F.3d 754, 756 (9th Cir. 1997).

26 An employer "may not use a third-party contractor to erect an arbitrary and discriminatory barrier to employment."

27 *EEOC v. BNSF Railway Co.*, 902 F.3d 916, 923 (9th Cir. 2018).

28 **APPELLANT JAIME MELENDEZ'S EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL UNDER CIRCUIT RULE 27-3 - 12**

Here, Plaintiff put TransCor's senior management on explicit notice, in writing, of the unlawful nature of ICE's decision. Management was aware they had the ability to intervene but chose not to, instead ignoring Plaintiff or claiming their hands were tied. This deliberate inaction constitutes ratification and acquiescence in the unlawful conduct. *See Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 968 (9th Cir. 2002).

## II. PLAINTIFF WILL SUFFER IMMEDIATE AND IRREPARABLE HARM.

The harm Plaintiff faces is not monetary; it is the permanent loss of a specific and unique job opportunity. The training for the Transportation Officer position begins on November 2, 2025. As made clear by TransCor's own director, this job will not be held open. (Melendez Decl., Ex. C). If the Court does not intervene now, this opportunity will be gone forever, a classic form of irreparable harm. Furthermore, the official finding of "Dishonest Conduct" inflicts severe and ongoing reputational harm that will prevent Plaintiff from obtaining similar employment in the future.

## III. THE BALANCE OF HARDSHIPS TIPS SHARPLY IN PLAINTIFF'S FAVOR.

The harm to Plaintiff—the loss of a career and livelihood—is catastrophic. In contrast, the harm to the Defendants is minimal. The Federal Defendants are merely being asked to temporarily pause a flawed and likely unlawful decision. The Corporate Defendants are being asked to hire a qualified candidate that they had already chosen and valued, as stated in their own communications. The balance of equities overwhelmingly favors granting the TRO.

## IV. THE INJUNCTION IS IN THE PUBLIC INTEREST.

The public has a strong interest in ensuring that federal agencies act rationally and in accordance with their own regulations. The public also has an interest in ensuring that federal contractors comply with federal civil rights laws and do not ratify discriminatory barriers to employment. Granting this injunction serves the public interest on both fronts.

CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his Motion.

APPELLANT JAIME MELENDEZ'S EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL UNDER CIRCUIT RULE 27-3 - 13

1   Plaintiff respectfully asks that the Court enjoin ICE from enforcing, disseminating, or relying on the October 2, 2025

2   "Dishonest Conduct" unsuitability determination as to Appellant and order ICE to hold it in abeyance pending

3   appeal; (2) enjoin TransCor/CoreCivic from rescinding the offer on the basis of that determination and require

4   reinstatement of Appellant's conditional offer to allow him to begin training on November 2, 2025, subject to

5   standard pre-employment conditions; and (3) grant such further interim relief as necessary to preserve appellate

6   jurisdiction and prevent irreparable harm. The Court should reverse the dismissal, hold that the APA claim is not

7   precluded by the CSRA on these facts and is plausibly pled, reinstate the Title VII claim against the corporate

8   defendants, and remand for further proceedings or enter a decision on its own. Alternatively, the Court should

9   remand with instructions to permit amendment, including to plead a procedural due process claim if the Court finds

10  it appropriate.

11

12

13  **Conclusion**

14

15  **1.  The Court's Jurisdiction Under the Administrative Procedure Act (APA)**

16  The court's determination that it lacked jurisdiction under the APA due to the preclusive effect of the CSRA is

17  flawed. While the CSRA provides a comprehensive remedial scheme for federal personnel actions, it does not

18  categorically preclude judicial review in all circumstances. The Ninth Circuit has recognized that the APA may still

19  apply where the CSRA does not provide an adequate remedy. For instance, in cases where the CSRA fails to address

20  specific claims or remedies, judicial review under the APA may remain available Andersen v. United States, 1993

21  U.S. App. LEXIS 26681, Gray v. Office of Personnel Management, 475 U.S. 1089.

22

23  The plaintiff's claims may fall outside the scope of the CSRA's "prohibited personnel practices" if they involve

24  issues not explicitly addressed by the CSRA. The court should have conducted a more thorough analysis to

25  determine whether the CSRA provided an adequate remedy for the plaintiff's claims before dismissing the case

26  outright.

27  **2.  Title VII Claims Against Private Corporations**

28  **APPELLANT JAIME MELENDEZ'S EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL
    UNDER CIRCUIT RULE 27-3 - 14**

1         Several cases support the plaintiff's arguments regarding judicial review under the APA, Title VII

2    claims against private corporations, and procedural due process protections. For example, Andersen v. United States,

3    1993 U.S. App. LEXIS 26681, and Gray v. Office of Personnel Management, 475 U.S. 1089, both recognize that the

4    APA may provide judicial review when the CSRA does not furnish an adequate remedy. These cases suggest that

5    courts should carefully analyze whether the CSRA covers the specific claims at issue before denying APA

6    jurisdiction.

7         Regarding Title VII claims against private corporations, Robinson v. Shell Oil Co., 519 U.S. 337

8    (1997), affirms that Title VII protections extend to job applicants and employees, supporting the argument that

9    private corporations acting as federal contractors must comply with federal civil rights laws.

10        For procedural due process, Hodges v. CGI Federal Defense & Intelligence, 2014 U.S. Dist.

11    LEXIS 154999, and Jensen v. Las Vegas Metropolitan Police Department, 2018 U.S. Dist. LEXIS 145023, both

12    acknowledge a constitutionally protected property interest in employment when a legitimate claim of entitlement

13    exists. These cases underscore the need for a thorough analysis of the circumstances surrounding employment

14    offers, even when contingent on background checks, before dismissing procedural due process claims.

15        Taken together, this case law demonstrates that the plaintiff's claims warrant further judicial

16    consideration rather than outright dismissal.

17    The court's dismissal of the plaintiff's Title VII claims for lack of a cognizable legal theory of ratification is also

18    problematic. Title VII of the Civil Rights Act prohibits employment discrimination by employers, including private

19    corporations, and provides a broad framework for addressing such claims 5 USCS § 2302. The plaintiff's reliance on

20    EEOC v. BNSF Ry. Co., 150 F.4th 948 may not have been entirely misplaced, as the Ninth Circuit has recognized

21    that Title VII claims can proceed against private entities under certain circumstances.

22

23    The court should have allowed the plaintiff to amend the complaint to clarify the legal theory and factual basis for

24    the Title VII claims, rather than dismissing them outright. Dismissal without providing an opportunity to amend is

25    particularly inappropriate where the plaintiff may be able to state a valid claim with additional factual allegations

26    Lund v. Cowan, 5 F.4th 964.

27    1.   Procedural Due Process Claim

28    **APPELLANT JAIME MELENDEZ'S EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL UNDER CIRCUIT RULE 27-3 -** 15

1   The court's rejection of the plaintiff's procedural due process claim on the grounds that it was improperly raised in a

2   motion for reconsideration and preempted by the CSRA is overly rigid. Procedural due process claims are rooted in

3   constitutional protections and may not always be preempted by statutory schemes like the CSRA. The Ninth Circuit

4   has held that public employees have a constitutionally protected property interest in continued employment when

5   they have a legitimate claim of entitlement to the job Hodges v. CGI Fed. Def. & Intelligence, 2014 U.S. Dist.

6   LEXIS 154999, Jensen v. Las Vegas Metro. Police Dep't, 2018 U.S. Dist. LEXIS 145023.

7

8   The plaintiff's claim that the job offer was contingent on passing a background check does not necessarily negate the

9   existence of a protected property interest. The court should have considered whether the plaintiff had a legitimate

10   expectation of employment based on the circumstances surrounding the job offer.

11     4.   Conclusion

12   The court's dismissal of the plaintiff's case was premature and failed to adequately consider the legal and factual

13   nuances of the claims. The plaintiff's APA claims may not be entirely precluded by the CSRA, and the Title VII

14   claims against private corporations warrant further factual development. Additionally, the procedural due process

15   claim raises significant constitutional issues that should not have been dismissed without a more thorough analysis.

16   For these reasons, the dismissal of the plaintiff's case should be reconsidered.

17

18

19   I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE.

20

21   DATED: 10/22/2025

22

23   RESPECTFULLY,

24

25   JAIME MELENDEZ, PRO SE.

26

27

28   **APPELLANT JAIME MELENDEZ'S EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL UNDER CIRCUIT RULE 27-3 - 16**

# EXHIBIT A

Jaime Melendez
44206 16th St E
Lancaster, CA. 93535
323-537-3636
JMelendez3000@Gmail.com

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JAIME MELENDEZ,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>DEPARTMENT OF HOMELAND SECURITY; ALEJANDRO MAYORKAS, IN HIS OFFICIAL CAPACITY AS SECRETARY OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; TODD LYONS, IN HIS OFFICIAL CAPACITY AS ACTING DIRECTOR OF U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; TRANSCOR, INC.; AND CORECIVIC, INC.,,<br><br>　　　　Defendant | Case No.:<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

### PRELIMINARY STATEMENT

1. This is a civil action for declaratory and injunctive relief under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Plaintiff Jaime Melendez seeks to set aside a final agency action by the U.S. Department of Homeland Security ("DHS") and U.S. Immigration and Customs Enforcement ("ICE") (collectively, "Federal Defendants") that found him unsuitable for a position as a contractor.

2. After Plaintiff received and accepted a conditional offer of employment from Defendant TransCor, Inc., Federal Defendants found Plaintiff unsuitable based solely on the mischaracterization of a nearly five-year-old polygraph examination result as "Dishonest Conduct". This determination was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 1

3. Plaintiff also brings this action against his prospective employer, Defendants TransCor, Inc., and its parent company, CoreCivic, Inc. (collectively, "Corporate Defendants"), for ratifying the Federal Defendants' unlawful action by refusing to take any corrective measures and rescinding the job offer, thereby violating Title VII.

4. Plaintiff seeks an emergency temporary restraining order and a preliminary injunction to reverse the suitability denial so that he may begin his employment, which is scheduled to start with training on November 2, 2025.

**JURISDICTION AND VENUE** 5. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. The right to judicial review is granted by 5 U.S.C. § 702. 6. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(e)(1) because the Plaintiff resides in this judicial district.

**PARTIES** 7. Plaintiff **JAIME MELENDEZ** is a citizen of the United States and a resident of Lancaster, California. 8. Defendant **DEPARTMENT OF HOMELAND SECURITY** is an executive department of the United States government. 9. Defendant **ALEJANDRO MAYORKAS** is the Secretary of Homeland Security and is sued in his official capacity. 10. Defendant **U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT** is a component agency within DHS. 11. Defendant **TODD LYONS** is the Acting Director of ICE and is sued in his official capacity. 12. Defendant **TRANSCOR, INC.** is a private corporation that extended a conditional offer of employment to Plaintiff. 13. Defendant **CORECIVIC, INC.** is the parent company of TransCor, Inc.

**FACTUAL ALLEGATIONS** 14. Plaintiff is an honorably discharged veteran of the United States military. 15. In or around September 2025, Plaintiff was offered a position as a Transportation Officer with Defendant TransCor. The offer was conditioned upon Plaintiff passing a background clearance to be adjudicated by ICE. 16. On October 2, 2025, ICE issued a letter finding Plaintiff "unsuitable" based on "Dishonest Conduct," derived from a CBP polygraph examination from January 2021. 17. The 2021 polygraph was nearly five years old. CBP policy allows applicants who fail a polygraph to reapply after two years. 18. On information and belief, Corporate Defendants have hired, and Federal Defendants have granted security clearances to, other applicants for the same or similar positions who have criminal backgrounds, including for domestic violence. 19. Plaintiff formally requested that ICE reconsider its flawed decision. 20. Plaintiff also emailed senior management at TransCor and CoreCivic, including General Manager Curtis Sullivan, providing them with a detailed legal and factual analysis demonstrating how ICE's decision was a misapplication of 5 C.F.R. § 731 and requesting their intervention. 21.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 2

TransCor's management ignored the request or claimed nothing could be done. Despite Plaintiff's pleas and his detailed explanation of the agency's legal errors, Corporate Defendants refused to take any corrective action and rescinded the offer.

**FIRST CAUSE OF ACTION** (Violation of the APA - Against Federal Defendants) 22. Plaintiff incorporates the preceding paragraphs. 23. The decision was **arbitrary, capricious, an abuse of discretion, and not in accordance with law** under 5 U.S.C. § 706(2)(A). 24. An agency action is arbitrary if the agency has "**entirely failed to consider an important aspect of the problem**." *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 43 (1983). 25. Federal Defendants' action was arbitrary because: (a) its interpretation of a polygraph result as "Dishonest Conduct" is irrational; (b) the agency failed to consider the mandatory "additional considerations" under 5 C.F.R. § 731.202(c); and (c) the decision is arbitrary as applied, treating Plaintiff more harshly than applicants with domestic violence histories.

**SECOND CAUSE OF ACTION** (Violation of Title VII – Against Corporate Defendants) 26. Plaintiff incorporates the preceding paragraphs. 27. The rescission of Plaintiff's offer is an adverse employment action. 28. Upon notice of the unlawful denial, Corporate Defendants had a legal duty to take corrective action. *Folkerson v. Circus Circus Ents., Inc.*, 107 F.3d 754, 756 (9th Cir. 1997). 29. An employer "may not use a third-party contractor to erect an arbitrary and discriminatory barrier to employment." *EEOC v. BNSF Railway Co.*, 902 F.3d 916, 923 (9th Cir. 2018). 30. Corporate Defendants breached this duty. Their management's silence and refusal to act constitutes ratification and acquiescence in the unlawful conduct.

**PRAYER FOR RELIEF** WHEREFORE, Plaintiff prays for an order: A. Declaring the Federal Defendants' decision unlawful and setting it aside; B. Granting a preliminary and permanent injunction ordering Federal Defendants to vacate the unsuitability finding; C. Compelling Federal Defendants to hold their decision in abeyance to permit Plaintiff to begin employment by November 2, 2025; D. Directing Corporate Defendants to reinstate their offer of employment; E. Awarding costs of suit; and F. Granting such other relief as the Court deems just.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 3

1

2    Dated: _____

3    **JAIME MELENDEZ** Plaintiff, In Propria Persona

4

5    Dated this 14th day of October, 2025.

6

7                             Jaime Melendez

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 4

1  Jaime Melendez, PRO SE
   44206 16th St E
2  Lancaster, CA. 93535
   323-537-3636
3  JMelendez3000@Gmail.com

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| JAIME MELENDEZ, | Case No.: |
| Plaintiff, | |
| vs. | **APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION** |
| DEPARTMENT OF HOMELAND SECURITY, ET AL., | |
| Defendant | |

[FRCP 65; L.R. 65]

Plaintiff Jaime Melendez hereby applies for a Temporary Restraining Order ("TRO") and an Order to Show Cause

Why a Preliminary Injunction Should Not Issue.

This application is made pursuant to Federal Rule of Civil Procedure 65 and Local Rule 65. It is based upon this

Application, the concurrently filed Complaint, the Memorandum of Points and Authorities, the Declaration of Jaime

Melendez and the exhibits attached thereto, and upon such other evidence and argument as may be presented to the

Court.

Plaintiff seeks a TRO to prevent immediate and irreparable harm—namely, the permanent loss of a specific job

opportunity scheduled to begin with training on November 2, 2025. This job offer was rescinded based on an

unlawful suitability determination by the Federal Defendants. As argued in the accompanying memorandum,

Plaintiff has a high likelihood of success on the merits, will suffer irreparable harm if an injunction is not issued, the

balance of hardships tips sharply in his favor, and the public interest supports granting the requested relief.

Therefore, Plaintiff respectfully requests that the Court issue a TRO compelling Defendants to provisionally hold the

suitability determination in abeyance and for Corporate Defendants to reinstate the offer of employment, thereby

preserving the status quo pending a hearing on a preliminary injunction.

APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE:
PRELIMINARY INJUNCTION - 1

1  **JAIME MELENDEZ** Plaintiff, In Propria Persona

2

3          Dated this 14th day of October, 2025.

4

5                                        _____
                                              Jaime Melendez
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE:
    PRELIMINARY INJUNCTION - 2

1  Jaime Melendez, PRO SE
   44206 16th St E.
2  Lancaster, CA. 93535
   323-537-3636
3  JMelendez3000@Gmail.com

4

5

6

7                    **UNITED STATES DISTRICT COURT**

8          **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

9

10

11

12

13  JAIME MELENDEZ,                          Case No.:

14            Plaintiff,

15  vs.                                       **MEMORANDUM OF POINTS AND**
                                              **AUTHORITIES IN SUPPORT OF PLAINTIFF'S**
16  DEPARTMENT OF HOMELAND SECURITY, ET AL.,  **APPLICATION FOR A TEMPORARY**
                                              **RESTRAINING ORDER**
17            Defendant

18

19

20         **INTRODUCTION**

21         Plaintiff Jaime Melendez, an honorably discharged military veteran, was offered a job as a

22  Transportation Officer with Defendant TransCor, Inc. ("TransCor"). The offer was rescinded after Defendant U.S.

23  Immigration and Customs Enforcement ("ICE") issued an arbitrary and unlawful decision finding him "unsuitable"

24  for employment. The sole basis for this decision was the mischaracterization of a nearly five-year-old polygraph

25  result as "Dishonest Conduct."

26         Plaintiff now faces the imminent and irreparable loss of this specific job opportunity, as the

27  training class is scheduled to begin on November 2, 2025. This Court's immediate intervention is required to

28  MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S APPLICATION FOR A
   TEMPORARY RESTRAINING ORDER - 1

1  preserve the status quo. As set forth below, Plaintiff has a high likelihood of success on the merits of his claims that

2  the agency's action violated the Administrative Procedure Act ("APA") and that his prospective employer,

3  TransCor, violated Title VII by ratifying the unlawful decision. The balance of hardships tips sharply in Plaintiff's

4  favor, and a temporary restraining order is in the public interest.

5  **STATEMENT OF FACTS**

6  Plaintiff is an eight-year veteran of the U.S. military, having served honorably as a Military Police

7  Officer, including a tour in Iraq. He holds multiple advanced academic degrees and has an unblemished personal

8  history. (Declaration of Jaime Melendez ["Melendez Decl."] ¶ 2). In September 2025, Plaintiff was offered a

9  position as a Transportation Officer with TransCor, contingent on a background clearance from ICE. (Melendez

10  Decl. ¶ 3, Ex. A).

11  On October 2, 2025, ICE issued a letter finding Plaintiff unsuitable based on a single data point: a

12  "Failed" polygraph examination from a U.S. Customs and Border Protection ("CBP") application in January 2021.

13  (Melendez Decl. ¶ 4, Ex. B). ICE characterized this result as "Dishonest Conduct" under 5 C.F.R. Part 731. This

14  determination was made despite the fact that CBP itself allows applicants to reapply just two years after a failed

15  polygraph. (Melendez Decl. ¶ 5). Furthermore, Plaintiff is aware that TransCor has hired, and ICE has cleared,

16  applicants with criminal backgrounds for domestic violence for the same or similar positions. (Melendez Decl. ¶ 6).

17  Plaintiff made every effort to resolve the issue without court intervention. He sent a detailed email

18  to senior management at TransCor and its parent company, CoreCivic, including General Manager Curtis Sullivan,

19  explaining the legal and factual flaws in ICE's decision and requesting their help. (Melendez Decl. ¶ 7).

20  Management either ignored his pleas or claimed, incorrectly, that nothing could be done. (Melendez Decl. ¶ 8). A

21  director at TransCor confirmed in a subsequent email that the job would not be held open, stating that if Plaintiff

22  could resolve the issue with ICE, he would only be able to "reapply for a position" and be considered for "future

23  opportunities." (Melendez Decl. ¶ 9, Ex. C). Without this Court's immediate intervention, this specific job

24  opportunity will be lost forever.

25  **LEGAL STANDARD FOR INJUNCTIVE RELIEF**

26  A party seeking a temporary restraining order must establish that (1) he is likely to succeed on the

27  merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips

28  MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S APPLICATION FOR A
TEMPORARY RESTRAINING ORDER - 2

1  in his favor, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20

2  (2008). Plaintiff satisfies all four factors.

3  **ARGUMENT**

4  **I. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS.**

5  **A. ICE's Unsuitability Determination Was Arbitrary and Capricious in Violation of the**

6  **APA.**

7  An agency action must be set aside if it is "arbitrary, capricious, an abuse of discretion, or

8  otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An action is arbitrary and capricious if the agency has

9  "entirely failed to consider an important aspect of the problem" or failed to articulate a "rational connection between

10  the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43

11  (1983).

12  ICE's decision fails this test. First, its conclusion that a polygraph result constitutes "Dishonest

13  Conduct" under 5 C.F.R. § 731.202 is irrational. Conduct requires a volitional act, not an involuntary physiological

14  response to a notoriously unreliable diagnostic tool. Second, the agency "entirely failed to consider an important

15  aspect of the problem" by ignoring the mandatory "additional considerations" outlined in its own regulations at 5

16  C.F.R. § 731.202(c). The agency gave dispositive weight to a single, nearly five-year-old event while ignoring the

17  overwhelming mitigating evidence of Plaintiff's honorable military service, advanced degrees, and unblemished

18  personal history. This failure to consider the "whole person" is a clear violation of the APA.

19  **B. The Corporate Defendants Violated Title VII by Ratifying ICE's Unlawful Act.**

20  An employer is liable under Title VII for the discriminatory acts of a third party if the employer

21  "ratifies or acquiesces in the [unlawful conduct] by not taking immediate and/or corrective actions when it knew or

22  should have known of the conduct." *Folkerson v. Circus Circus Enterprises, Inc.*, 107 F.3d 754, 756 (9th Cir. 1997).

23  An employer "may not use a third-party contractor to erect an arbitrary and discriminatory barrier to employment."

24  *EEOC v. BNSF Railway Co.*, 902 F.3d 916, 923 (9th Cir. 2018).

25  Here, Plaintiff put TransCor's senior management on explicit notice, in writing, of the unlawful

26  nature of ICE's decision. Management was aware they had the ability to intervene but chose not to, instead ignoring

27

28  MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S APPLICATION FOR A
TEMPORARY RESTRAINING ORDER - 3

1  Plaintiff or claiming their hands were tied. This deliberate inaction constitutes ratification and acquiescence in the

2  unlawful conduct. *See Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 968 (9th Cir. 2002).

**II. PLAINTIFF WILL SUFFER IMMEDIATE AND IRREPARABLE HARM.**

4        The harm Plaintiff faces is not monetary; it is the permanent loss of a specific and unique job

5  opportunity. The training for the Transportation Officer position begins on November 2, 2025. As made clear by

6  TransCor's own director, this job will not be held open. (Melendez Decl., Ex. C). If the Court does not intervene

7  now, this opportunity will be gone forever, a classic form of irreparable harm. Furthermore, the official finding of

8  "Dishonest Conduct" inflicts severe and ongoing reputational harm that will prevent Plaintiff from obtaining similar

9  employment in the future.

**III. THE BALANCE OF HARDSHIPS TIPS SHARPLY IN PLAINTIFF'S FAVOR.**

11        The harm to Plaintiff—the loss of a career and livelihood—is catastrophic. In contrast, the harm to

12  the Defendants is minimal. The Federal Defendants are merely being asked to temporarily pause a flawed and likely

13  unlawful decision. The Corporate Defendants are being asked to hire a qualified candidate that they had already

14  chosen and valued, as stated in their own communications. The balance of equities overwhelmingly favors granting

15  the TRO.

**IV. THE INJUNCTION IS IN THE PUBLIC INTEREST.**

17        The public has a strong interest in ensuring that federal agencies act rationally and in accordance

18  with their own regulations. The public also has an interest in ensuring that federal contractors comply with federal

19  civil rights laws and do not ratify discriminatory barriers to employment. Granting this injunction serves the public

20  interest on both fronts.

**CONCLUSION**

22        For the foregoing reasons, Plaintiff respectfully requests that the Court grant his Application for a

23  Temporary Restraining Order.

24

25

26

27

28  MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S APPLICATION FOR A
TEMPORARY RESTRAINING ORDER - 4

Dated: _____

**JAIME MELENDEZ** Plaintiff, PRO SE

Dated this 14th day of October, 2025.

_____
Jaime Melendez

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER - 5

Jaime Melendez, PRO SE
44206 16th St E
Lancaster, CA. 93535
323-537-3636
JMelendez3000@Gmail.com

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JAIME MELENDEZ,<br><br>       Plaintiff,<br><br>vs.<br><br>DEPARTMENT OF HOMELAND SECURITY, ET AL.,<br><br>       Defendant | Case No.:<br><br>**[PROPOSED] TEMPORARY RESTRAINING ORDER** |

The Court, having considered Plaintiff Jaime Melendez's ex parte Application for a Temporary

Restraining Order, the supporting Memorandum of Points and Authorities, the Declaration of Jaime Melendez and

the exhibits attached thereto, and the Complaint on file in this action, and finding that Plaintiff is likely to succeed

[PROPOSED] TEMPORARY RESTRAINING ORDER - 1

on the merits and will suffer immediate and irreparable harm in the form of a lost job opportunity if relief is not granted, hereby ORDERS as follows:

1. Defendant Department of Homeland Security and Defendant U.S. Immigration and Customs Enforcement (collectively, "Federal Defendants") are hereby ORDERED to immediately hold in abeyance their October 2, 2025 unsuitability determination regarding Plaintiff Jaime Melendez. This determination shall have no force or effect pending this Court's hearing and ruling on Plaintiff's Motion for a Preliminary Injunction.

2. Federal Defendants are ORDERED to immediately communicate to Defendants TransCor, Inc. and CoreCivic, Inc. (collectively, "Corporate Defendants") that the October 2, 2025 unsuitability determination is held in abeyance and does not currently stand as a barrier to Plaintiff's employment.

3. Corporate Defendants are hereby ORDERED to reinstate their conditional offer of employment to Plaintiff and permit him to begin the training for the Transportation Officer position on November 2, 2025, subject to all other standard hiring requirements.

4. This Order shall remain in full force and effect until the date of the hearing on Plaintiff's Motion for a Preliminary Injunction, or until further order of this Court.

5. Given Plaintiff's indigent status, the requirement of a bond under FRCP 65(c) is waived.

6. A hearing on Plaintiff's Order to Show Cause Re: Preliminary Injunction is hereby set for

_____, 2025, at : __

Dated this 14th day of October, 2025.

_____

Jaime Melendez

[PROPOSED] TEMPORARY RESTRAINING ORDER - 2

1  Jaime Melendez, PRO SE
   44206 16th St E.
2  Lancaster, CA. 93535
   323-537-3636
3  JMelendez3000@Gmail.com

4

5

6

7              UNITED STATES DISTRICT COURT

8       CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

9

10

11

12

13  JAIME MELENDEZ,                          Case No.:

14            Plaintiff,

15  vs.                                      **DECLARATION OF JAIME MELENDEZ IN**
                                             **SUPPORT OF APPLICATION FOR TEMPORARY**
16  DEPARTMENT OF HOMELAND SECURITY, ET AL,  **RESTRAINING ORDER**

17            Defendant

18

19

20

21

22            I, Jaime Melendez, declare as follows:

23     1.  I am the Plaintiff in this action. I have personal knowledge of the facts stated in this declaration and, if

24         called as a witness, I could and would competently testify to them.

25     2.  I am an honorably discharged veteran of the United States military, where I served for eight years as a

26         Military Police Officer, including a tour of duty in the Iraq War. I hold an Associate's Degree in Criminal

27

28  DECLARATION OF JAIME MELENDEZ IN SUPPORT OF APPLICATION FOR TEMPORARY
    RESTRAINING ORDER - 1

Justice, a Bachelor's Degree in Public Administration, and a Master's Degree in Public Administration. I have an unblemished criminal record and a clean driving and credit history.

3. In September 2025, I was offered a position as a Transportation Officer with Defendant TransCor, Inc. ("TransCor") in California City, California. I accepted the offer, which was contingent on a background clearance to be adjudicated by U.S. Immigration and Customs Enforcement ("ICE"). A true and correct copy of the job offer letter is attached hereto as **Exhibit A**.

4. Shortly after accepting the offer, I received an email from Ms. Yates of TransCor providing flight information for my travel to the mandatory training scheduled to begin on November 2, 2025. A true and correct copy of the email with the flight information is attached hereto as **Exhibit B**.

5. On October 2, 2025, I received a letter from ICE finding me "unsuitable" for the position. The sole reason given for this decision was "Dishonest Conduct," which the letter stated was based on the results of a U.S. Customs and Border Protection ("CBP") polygraph examination from on or about January 8, 2021. A true and correct copy of the denial letter is attached hereto as **Exhibit C**.

6. The polygraph examination referenced in the letter was nearly five years old at the time of ICE's decision. I am aware from CBP's public website that CBP's own policy allows an applicant who fails a polygraph examination to reapply for a position after only two years have passed.

7. On or about October 11, 2025, I spoke with a manager at TransCor who informed me that the company has hired, and ICE has cleared, other individuals for the same or similar Transportation Officer positions who had criminal backgrounds, including for domestic violence.

8. After receiving the denial, I made every effort to resolve the matter directly with TransCor and its parent company, CoreCivic. I sent a detailed email to senior management, including General Manager Curtis Sullivan, Mr. Minnigan, and Ms. Jackson, explaining the factual and legal errors in ICE's decision and respectfully requesting their intervention. A true and correct copy of this email is attached hereto as **Exhibit D**.

9. Mr. Sullivan and Mr. Minnigan ignored my email. Ms. Jackson responded by stating that TransCor could not influence or alter ICE's decision. No manager offered to take any corrective action on my behalf.

DECLARATION OF JAIME MELENDEZ IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER - 2

10. In a subsequent email, a director from TransCor confirmed that the specific job I was offered would not be held open for me. She stated that if I managed to resolve the issue with ICE, I would only be able to "reapply for a position" and be considered for "future opportunities." A true and correct copy of this email is attached hereto as **Exhibit D**.

11. The training for the Transportation Officer position I was offered is scheduled to begin on November 2, 2025. Based on the email from the director, I understand that if this Court does not intervene, this specific job opportunity will be permanently lost, regardless of the ultimate outcome of my case

DECLARATION OF JAIME MELENDEZ IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER - 3

# EXHIBIT A

❮ Back to Presence



# Offer Letter

September 19, 2025

Mr. Jaime Melendez
44206 16 Street East
Lancaster, CA 93535

Dear Jaime,

We are pleased to offer you the position of Transportation Officer at our California City Immigration Processing Center facility.

Compensation & Sign-On Bonus

- Base Pay: $49.55 per hour, paid on a bi-weekly basis, with applicable benefits.
- Sign-On Bonus: $3,500, distributed as follows:
- 50% after 6 months of satisfactory or above performance
- 50% after 12 months of satisfactory or above performance

CDL-Based Bonus Adjustment:

- Full CDL holders: Eligible for the full $3,500.
- Non-Full CDL holders:
    - Initial bonus of $2,000
    - Additional $1,500 upon obtaining the required license through our in-network trainer

If you do not currently hold the necessary CDL and/or necessary endorsements, TransCor will cover up to $1,500 for CDL/ELDT training through our approved network instructors.

By signing below, you authorize TransCor America to withhold up to $1,500 (covering any CDL training costs) from your final paycheck if you voluntarily or involuntarily separate from the company within 12 months of your start date 11/02/2025.

Tentative Start Date: 11/02/2025

This offer is contingent upon successful completion of the following pre-employment requirements:

- Reference checks, education verification, background & drug screening
- Motor vehicle records check and/or fingerprinting
- ICE and/or USMS clearance (if required)
- TB (PPD) skin test (company-paid)
- DOT physical, DOT Medical Certificate, and Human Performance Evaluation
- Completion of TransCor's paid training program (written, practical, final exams, and on-the-job training)

- Obtaining a CDL with airbrake and passenger endorsements within 6 months of completing training

Failure to obtain required CDL or clearance may result in reassignment, relocation, or termination of employment.

Please indicate your acceptance of these conditions by e-signing this offer letter:

Signature of Acceptance: _____ Date of Acceptance: _____

Welcome to the team!

Sincerely,

Shon Halterman
Transportation Supervisor

---

# Documents

📄 2025 Benefit Guide.pdf

📄 Policy 3-5, Paid Leave Benefits (3-26-19).docx

Electronically Signed By

**Jaime Melendez**

Signed on September 19, 2025

Download Offer Letter (PDF)

**Questions?**
Contact Austen Yates
✉ austen.yates@transcor.com

---

Transcor ⟐

# EXHIBIT B

I forgot to ask one question. Will the travel date be on Saturday November 1, 2025 or November 2, 2025?


Thanks,


**Jaime Melendez, MPA**
**44206 16th St E**
**Lancaster, CA. 93535**
**323-537-3636**


On Wednesday, September 24, 2025 at 11:20:39 AM PDT, Yates, Austen <austen.yates@transcor.com> wrote:

Hi there!

We are SO excited to have you join on **November 2nd** for our *Pre-Service Academy*. Just wanted to make you aware of a couple important dates.

**Flights(if you want to fly):** Reminder: we will pay for flights for you and book it for you or **if you do not want to fly**, we will reimburse you for mileage/gas up to the cost of a plane ticket. If you are planning on flying to training, you will receive your flight information from @Arredondo, Michael.

- ***Please email him*** @Arredondo, Michael and let him know if you would like to fly or drive and your preferred airport.

- You can have a carry on, personal item (such as a purse or backpack), and one checked bag. We will reimburse you for the checked bag!

- Also, to travel to Nashville (our corporate office) for training, you do need a Real ID so please make sure to get that as well because it makes it harder to fly without it. **If you are choosing to drive instead**, do not worry about this Real ID. Here is the link to learn more about the Real ID https://www.tsa.gov/real-id

**Training Schedule:** You will be receiving your training schedule the week before your start date from our Learning and Development Manager @Miller, Benjamin.

**Dress Code:** Attached is the dress code! You will be receiving TransCor Polos and a TransCor long sleeve pullover for training 😊

- For dress code questions or schedule questions please reach out to @Miller, Benjamin

**Food Per Diem:** We pay the hotel to provide breakfast, so each new hire is provided $12 for lunch and $20 for dinner for each day of training including weekends. We include a full day of $42 per diem for travel on Sunday and back on Thursday. The total amount for the three weeks of training is $670.00.

**Hotel:** Click **here** to learn more about the hotel! It does have a fitness center and outdoor pool as well. You will have a separate bedroom but share a suite with 1 same gender roommate (most likely from your facility).

Re: Per Diem & Hotel Information *November 2nd* Class

From: Jaime Melendez (jaimemelendez35@yahoo.com)

To: austen.yates@transcor.com

Date: Thursday, September 25, 2025 at 09:16 AM PDT

Thank you.

**Jaime Melendez, MPA**
**44206 16th St E**
**Lancaster, CA. 93535**
**323-537-3636**

On Thursday, September 25, 2025 at 08:52:55 AM PDT, Yates, Austen <austen.yates@transcor.com> wrote:

November 2nd (a Sunday) we pay you for some travel time so we consider that your start date even though you are getting settled in at the hotel that day and do not start the actual class training portion until that Monday. But yes, your first day here is the 2nd 😊

Let me know if that makes sense!

**Austen Yates | Manager, Talent Acquisition**

TransCor America LLC | 646 Melrose Ave Nashville TN 37211
Office: 615-415-3607 | Email : austen.yates@transcor.com | www.transcor.com


Performance Driven By Excellence



**From:** Jaime Melendez <jaimemelendez35@yahoo.com>
**Sent:** Wednesday, September 24, 2025 5:24 PM
**To:** Yates, Austen <austen.yates@transcor.com>
**Subject:** Re: Per Diem & Hotel Information *November 2nd* Class

CAUTION: This email came from outside the organization. Attachments and links may contain viruses and other malicious software.

Hi Austen,

SONESTA ES SUITES

**Austen Yates | Manager, Talent Acquisition**

TransCor America LLC | 646 Melrose Ave Nashville TN 37211
Office: 615-415-3607 | Email : austen.yates@transcor.com | www.transcor.com



*Performance Driven By Excellence*



# EXHIBIT C

## ICE Final Determination Correspondence – Melendez

From: EOD-FinalDetermination (eod-finaldetermination@ice.dhs.gov)

To: jmelendez3000@gmail.com

Date: Monday, October 6, 2025 at 10:22 AM PDT

Greetings,

Attached find the final determination regarding your processing with U.S. Immigration and Customs Enforcement. Please be advised this is a final decision.

Password to follow.

U.S. Immigration and Customs Enforcement
Personnel Security

*WARNING: The information contained herein remains under the control of the Department of Homeland Security (DHS), through the U.S. Immigration and Customs Enforcement (ICE). It is being disseminated for authorized law enforcement purposes only. This e-Mail and/or information accompanying this e-Mail are confidential, belonging to the sender and are protected. This information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please notify me immediately by telephone or E-Mail.*



EOD - Unfit Letter - Melendez.pdf
281.5 kB

*Office of Professional Responsibility*

**U.S. Department of Homeland Security**
4050 Alpha Road, Suite 1200
Farmers Branch, TX 75244

 U.S. Immigration
and Customs
Enforcement

October 2, 2025

Jaime Melendez
42301 Alicante Street
Quartz Hill, CA 93536

Dear Jaime Melendez:

This letter is in reference to your application to work for the U.S. Department of Homeland Security (DHS), U.S. Immigration and Customs Enforcement (ICE) as a Transportation Officer.

After review of relevant information, issues were revealed which were serious enough to find you unsuitable for the above referenced position due to the following:

> ***Dishonest Conduct: Results from your Law Enforcement Applicant Polygraph Examination administered by U.S. Customs and Border Protection on or about January 8, 2021, indicated Significant Response (Failed), which is an indication of deception.***

The issues we have identified indicate your character or conduct may have an adverse impact on the integrity or efficiency of the service. The determination to find you unfit has been made in accordance with 5 C.F.R. Part 731 and it is a final decision that is not subject to further appeal.

Sincerely,

For  MICHAEL E  Digitally signed by
     JOHNSON  MICHAEL E JOHNSON
              Date: 2025.10.02
              08:54:32 -05'00'

Carlos R. Okey
Section Chief
Personnel Security Division

# EXHIBIT D

**Petition for Reconsideration**

From: Jaime Melendez (jmelendez3000@gmail.com)

To: curtiss.sullivan@transcor.com

Date: Thursday, October 9, 2025 at 07:04 AM PDT

Good Afternoon Mr. Sullivan,

I hope this message finds you well. My name is Jaime Melendez, and I am writing to respectfully present my situation and seek your assistance regarding my recent employment clearance decision.

Allow me to share a brief overview of my background. I am a resident of California, a devoted husband, and a father of four. Academically, I hold an Associate's Degree in Criminal Justice, a Bachelor's Degree in Public Administration with a minor in pre-law, and a Master's Degree in Public Administration. In addition to my educational achievements, I honorably served in the military as a Military Police Officer, completing a tour in Iraq and concluding eight years of service with distinction.

Recently, Ms. Takishita reached out to me about an opportunity to join the team as a Transportation Officer in California City, which is conveniently close to my home. I was fortunate to interview with Captain Ron and the Lieutenant, and I was genuinely enthusiastic when I received and accepted a job offer. I also had the pleasure of connecting with several TransCor team members, including Austen and others, and looked forward to joining such an esteemed group.

Regrettably, my employment process was halted when ICE denied my security clearance. The reason for this denial was particularly disheartening, as it stemmed from my failure of a polygraph examination during my application for Border Patrol in January 2021, nearly five years ago. What I find troubling is that Border Patrol policy allows reapplication two years after a failed polygraph, yet my clearance was denied after almost five years had passed.

The ICE official processing my clearance interpreted my failed polygraph as an act of dishonest conduct, referencing 5 C.F.R. 731, which states that an applicant may be deemed unsuitable for dishonest conduct. However, I respectfully contend that not passing a polygraph should not automatically be equated with dishonest behavior. Dishonest conduct, in my understanding, refers to actions such as theft or fraud, not the results of a single polygraph test. The broad definition of "dishonest conduct" seems to be applied inconsistently in this case.

Moreover, 5 C.F.R. 731 mandates that the recency of the conduct be considered in suitability determinations. Given that ICE permits reapplication two years after a failed polygraph, I believe that an incident from nearly five years ago should not be considered recent, and I feel that this aspect was not adequately taken into account in my evaluation.

Mr. Sullivan, I was genuinely excited about the prospect of joining your organization and would be deeply disappointed to lose this opportunity due to what I perceive as an unjust decision. I maintain a strong credit history, a clean driving record, no criminal history, and am an honorable veteran. My academic achievements include maintaining a GPA above 3.0 during my bachelor's studies and above 3.5 during my master's program. It is difficult to reconcile these qualifications with the conclusion that I am unsuitable to drive a bus.

With over 20 years of experience operating various types of buses—including school buses, trolleys, and coaches—I am confident in my skills and believe these credentials were recognized by Captain Ron and the Lieutenant during my interview process.

Unfortunately, after speaking with Selina Luna Moreno from CoreCivic, I was informed that my employment process with TransCor had concluded. Despite requesting reconsideration or resubmission of my clearance with a letter of explanation, my request was declined. Ms. Luna Moreno communicated with Ms. Takishita, who confirmed that the decision was final.

During my discussions with Selina Luna Moreno, she informed me that CoreCivic is able to reach out to ICE regarding clearance denials. However, in my particular case, she explained that in order to do that she wanted me to provide evidence that the polygraph examination results were incorrect, regardless of the strength of my argument. I requested that my security clearance be re-submitted or that TransCor submit my case for reconsideration, but Selina denied my request to take any further action unless I could demonstrate that the polygraph was incorrect, this decision was affirmed

by Ms. Takishita presumably because Selina said she called Ms. Takishita to find out what she wanted to do about my situation and later called me back stating that unfortunately she was not going to speak to ICE about my denial, suggesting that Ms. Takishita had agreed with her decision to not contact ICE. Moreover, Selina explained that in the past she has contacted ICE regarding denials but that in my case despite my strong argument she wanted me to show that the polygraph was incorrect. I pleaded that she please contact them because their decision was extremely flawed, but all she did was apologize and denied my request. At one point she told me: "and what are you gonna say to them." As I explained my reasoning, yet she continued to reject my valid reasoning. While Selina keeps arguing that TransCor cannot influence or alter ICE decision, hence her reasoning for not reaching out to them regarding my situation, the question remains as to why she has done it in the past for others, yet in my case she does not. Moreover, reaching out to ICE regarding a denial is not influencing a decision as intended by the statute. Influencing an ICE decision would be something like saying to ICE "grant this applications and I will send you 100 cakes," that is what is meant by the statute regarding "influence."

Mr. Sullivan I am reaching out to you, to express my sincere disappointment and to request your support in addressing this matter. The loss of this opportunity has had a significant emotional and financial impact on me and my family, especially after enduring a severe adverse reaction to medication prescribed by the VA, which nearly ended my life, and nearly losing my son to a suicide attempt after being bullied in school. This position represented hope for my family and me, and I respectfully plead for your consideration in advocating for a fair review of my case and helping prevent similar discriminatory practices for others in the future.

I have recently emailed ICE directly, seeking reconsideration of their decision, and I await their response. Thank you for your time and consideration, and I look forward to any guidance or assistance you may be able to provide.

P.S. I have attached the letter of denial here.

CBP link which shows that applicants who failed the polygraph may re-take the test after two years: https://careers.cbp.gov/s/applicant-resources/polygraph

Sincerely,

Jaime Melendez


ICE Unfit.pdf
673.9 kB

## (2) Regarding Application for Driver Position - Jaime Melendez

From: Jaime Melendez (jmelendez3000@gmail.com)

To: anthony.minnigan@transcor.com

Date: Wednesday, October 8, 2025 at 03:37 PM PDT

Mr. Minnigan, below you will find the email I sent to ICE (sent as a reply email), Selina, and Ms. Takishita.

To Whom It May Concern,

My name is Jaime Melendez, and I am writing to formally request a redetermination of the denial of my security clearance. I believe this decision was based on a misapplication of the suitability standards outlined in 5 C.F.R. § 731.

The denial was based on a single event: a failed polygraph examination from a U.S. Customs and Border Protection (CBP) application in January 2021. I respectfully submit that this determination is legally and factually flawed for the following reasons:

First, the characterization of a failed polygraph examination as "dishonest conduct" under 5 C.F.R. § 731.202(b)(3) is a misinterpretation of the regulation. "Conduct" * implies a volitional act, such as falsification, theft, or fraud. A polygraph result is not an act committed by the applicant; it is the outcome of a diagnostic tool with acknowledged limitations. To equate this result with an affirmative act of dishonesty is an error in the application of the standard.

Second, the decision fails to properly weigh the mandatory "additional considerations" outlined in 5 C.F.R. § 731.202(c). Specifically:

1. **Recency of Conduct (§ 731.202(c)(4)):** Nearly five years have passed since the examination. The originating agency, CBP, itself permits reapplication just two years after a failed polygraph. Denying clearance based on an event that is more than double the length of the agency's own established timeframe for reconsideration is inconsistent and fails to treat the event as non-recent.

2. **Nature and Seriousness of Conduct (§ 731.202(c)(2)):** Even if considered "conduct," a polygraph result is not a criminal conviction or an adjudicated finding of misconduct. Its seriousness is minimal when weighed against my entire record.

3. **Absence of Rehabilitation (§ 731.202(c)(7)):** The decision appears to isolate this single data point while ignoring the overwhelming and more recent evidence of my suitability. My record includes eight years of honorable service as a Military Police Officer, a clean criminal and driving history, a strong credit record, and the attainment of multiple advanced academic degrees. This entire body of evidence demonstrates my character and contradicts the negative inference drawn from one event nearly five years ago.

Furthermore, the practice of indefinitely disqualifying an applicant based on another agency's dated polygraph result—particularly when that agency has a far shorter, two-year waiting period—creates an arbitrary and inequitable barrier to employment. Such an inconsistent application of suitability standards is not rationally related to determining fitness and can amount to a discriminatory practice, violating the principles of fair and merit-based federal employment practices enforced by the U.S. Equal Employment Opportunity Commission under Title VII of the Civil Rights Act of 1964.

The denial of my clearance is based on a mischaracterization of a polygraph result and a failure to properly consider the mitigating factors of recency and the totality of evidence as required by federal regulations. This clearance is of significant importance to my family and me, and has caused considerable distress.

For these reasons, I respectfully request a full and fair redetermination of my case.

P.S. I have attached the letter of denial.
The CBP policy on polygraph re-takes can be found here: https://careers.cbp.gov/s/applicant-resources/polygraph

\* The concept of "conduct" implying a volitional act, such as falsification, theft, or fraud, is supported by case law in the 9th Circuit, particularly in the context of copyright infringement and other legal frameworks. The 9th Circuit has consistently emphasized that volitional conduct requires proximate causation and active participation in the act, distinguishing it from passive or automated processes. This principle is relevant when considering whether an act, such as a polygraph result, constitutes volitional conduct, as the result itself is an outcome of a diagnostic tool rather than an intentional act by the individual.

- In Perfect 10, Inc. v. Giganews, Inc., 847 F.3d 657, the 9th Circuit clarified that "volition" in the context of copyright infringement does not mean an act of willing or choosing but rather proximate causation underlying liability. The court emphasized that direct liability must be premised on conduct that can reasonably be described as the direct cause of the infringement, distinguishing between active participation and passive storage or transmission of material Travieso v. Glock Inc., 526 F. Supp. 3d 533.
- In Bell v. Wilmott Storage Servs., LLC, 12 F.4th 1065, the court rejected the argument that non-volitional conduct could serve as a defense to copyright infringement. It held that the defendant's conduct was volitional for purposes of copyright infringement, as the actions taken were sufficient to establish causation and liability, even if the infringement was not intentional Perfect 10, Inc. v. Giganews, Inc., 847 F.3d 657.
- In Hunley v. Instagram, LLC, 73 F.4th 1060, the court reiterated that proof of volitional conduct is required for direct infringement claims under the Copyright Act. The court distinguished between active engagement in infringing activities and passive activities, such as merely supplying equipment or hosting content, which do not meet the volitional-conduct requirement Bell v. Wilmott Storage Servs., LLC, 12 F.4th 1065.
- In VHT, Inc. v. Zillow Grp., Inc., 918 F.3d 723, the court emphasized that volitional conduct requires proximate causation and active involvement in the infringing act. It noted that automated systems, such as the Zillow website, do not meet the volitional-conduct requirement unless the defendant actively selects or controls the infringing content Hunley v. Instagram, LLC, 73 F.4th 1060.
- In SA Music LLC v. Apple, Inc., 592 F. Supp. 3d 869, the court applied the volitional-conduct requirement to deny summary judgment, holding that liability must be based on conduct that can reasonably be described as the direct cause of the infringement. The court distinguished between active participation in uploading infringing content and passive operation of a platform, which does not constitute volitional conduct VHT, Inc. v. Zillow Grp., Inc., 918 F.3d 723.

Moreover, The Ninth Circuit has recognized employer liability for discriminatory conduct by third parties, including government agencies, if the employer ratifies or acquiesces in the discriminatory conduct by failing to take corrective action. In such cases, the employer's inaction could be interpreted as endorsing the discriminatory practices, thereby creating liability under anti-discrimination laws United States EEOC v. Global Horizons, Inc., 860 F. Supp. 2d 1172.

Sincerely,

**Jaime Melendez, MPA**
**44206 16th St E**
**Lancaster, CA. 93535**
**323-537-3636**

# EXHIBIT B

On October 14, 2025, Plaintiff filed a Complaint and a Request to Proceed In Forma Pauperis. (Dkt. Nos. 1, 3.) The action is based on the withdrawal of an employment offer to Plaintiff as a transportation officer for United States Immigration and Customs Enforcement ("ICE"). (Dkt. No. 1 at 2.) Plaintiff had been offered the job by a private corporation, TransCor., which in turn had a contract with the federal government. (Id. at 1, 2.) In September 2025, Plaintiff received the job offer, conditioned upon his passing a background clearance. (Id. at 2.) In October 2025, however, ICE found Plaintiff "unsuitable" for the position based on "Dishonest Conduct," specifically, a polygraph examination that Plaintiff had failed in January 2021, when he had applied for a position with another federal agency. (Id.) Thus, the offer Plaintiff had received to work as a transportation officer for ICE was rescinded. (Id. at 3.) Plaintiff raises two claims: (1) violation of the Administrative Procedure Act ("APA") by federal agencies for unlawful action, and (2) violation of Title VII of the Civil Rights Act by TransCor. and its parent company for ratifying the federal agencies. (Id. at 3.) As stated below, the Complaint is dismissed without leave to amend.

First, the Court has no jurisdiction under the APA to review Plaintiff's claim that federal agencies acted unlawfully in rescinding the offer due to his unsuitability. "In Veit v. Heckler, 746 F.2d 508 (9th Cir.1984), [the Ninth Circuit] held that the general judicial review provisions of the APA never confer jurisdiction to review federal personnel actions." Blue v. Widnall, 162 F.3d 541, 545 (9th Cir. 1998). Instead, the Civil Service Reform Act of 1978 established a comprehensive system for reviewing personnel actions, which may entail a hearing before the Merit Systems Protection Board. See Elgin v. Dept. of Treasury, 567 U.S. 1, 5-6 (2012). The Board has "jurisdiction to review all aspects of an unsuitability determination, including whether the charged conduct renders an individual unsuitable for the position." Folio v. Dept. of Homeland Security, 402 F.3d 1350, 1356 (Fed. Cir. 2005); see also Solis v. Merit Systems Protection Board, 703 F. App'x 964, 971 (Fed. Cir. 2017) (affirming Board's dismissal of a claim by a non-selected applicant who had failed a polygraph examination). But even in the absence of a remedy before the Board for a challenged federal personnel action, "the [Civil Service Reform Act] precludes resolution of the employee's claims in federal court." Chiang v. Gonzales, 2006 WL 8449284, at *7 (C.D. Cal. May 9, 2006) (citing cases).

Second, Plaintiff has failed to state a claim under Title VII against the private corporate Defendants. See 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff's allegation that the private corporate Defendants ratified the federal agency's non-selection, based on Plaintiff's failed polygraph examination, is not actionable under Title VII. Plaintiff cites authority holding that, for Title VII retaliation claims based on ratification, "[u]nder certain circumstances, the discriminatory acts of persons other than the employer will be imputed to the employer constituting an unlawful employment practice of the employer." Folkerson v. Circus Circus Enterprises, Inc., 107 F.3d 754, 755 (9th Cir. 1997). But Plaintiff is not raising a retaliation claim. Instead, Plaintiff alleges a failure to hire based on a failed polygraph examination, which is not discriminatory. See Anderson v. Arizona, 2007 WL 1461623, at *15 (D. Ariz. May 16, 2007) ("Title VII does not empower this court to sit as a super personnel department that reexamines an entity's business decisions.") (citation omitted).

Finally, leave to amend is not warranted. Amendment of the APA claim would be futile because the remedy, if any, arises from the Civil Service Reform Act. See Reed v. Dept. of Homeland Security, 2017 WL 2701940, at *5 (C.D. Cal. May 25, 2017) (amendment is futile where the exclusive avenue for relief is under the Civil Service Reform Act). Amendment of the Title VII claim would be futile because its underlying legal theory of ratification fails. See Parents for Privacy v. Barr, 949 F.3d 1210, 1239 (9th Cir. 2020) (amendment is futile where the "legal theories fail"). Thus, the Complaint is dismissed without leave to amend, and the action is dismissed without prejudice to Plaintiff seeking relief, if any is available, in another forum.

*(attach additional pages if necessary)*

# EXHIBIT C

Jaime Melendez, PRO SE
44206 16th St E
Lancaster, CA. 93535
323-537-3636
JMelendez3000@Gmail.com

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JAIME MELENDEZ, | Case No.: 2:25-CV-09814-FMO-PVCx |
| Plaintiff, | |
| vs. | **EX PARTE APPLICATION FOR ORDER SHORTENING TIME FOR RESPONSE TO MOTION FOR RECONSIDERATION** |
| DEPARTMENT OF HOMELAND SECURITY, ET AL, | |
| Defendant | |

[L.R. 7-19; Fed. R. Civ. P. 6(c)]

**I. INTRODUCTION**

COMES NOW, Plaintiff Jaime Melendez, in propria persona, pursuant to Rule 6(c) of the Federal Rules of Civil Procedure, and hereby respectfully moves this Court for an order shortening the time for Defendants to respond to the Motion for Reconsideration. This motion is made on the grounds that good cause exists to expedite the response time to avoid irreparable harm and to ensure the timely resolution of the underlying matter.

**II. STATEMENT OF FACTS**

On October 20, 2025, Plaintiff is filing a Motion for Reconsideration in this Court, seeking relief from the Court's prior order dismissing the case. The underlying case involves Plaintiff's claims under the Administrative Procedure Act (APA) and Title VII of the Civil Rights Act, which were dismissed on substantive grounds. Plaintiff has demonstrated urgency in this matter, as the dismissal of the case prevents consideration of his Application for a Temporary Restraining Order (TRO), which is necessary to prevent the immediate and irreparable harm of losing a specific job opportunity with a training start date of **November 2, 2025**. Plaintiff now seeks to expedite the response time for the Motion for Reconsideration to prevent further harm and to preserve the opportunity for meaningful relief.

EX PARTE APPLICATION FOR ORDER SHORTENING TIME FOR RESPONSE TO MOTION FOR RECONSIDERATION - 1

## III. LEGAL BASIS

1. Rule 6(c) of the Federal Rules of Civil Procedure provides that motions and notices of hearing must generally be served at least 14 days before the hearing, but exceptions exist for ex parte motions or when the court orders otherwise for good cause. USCS Fed Rules Civ Proc R 6.

2. Rule 16 of the Federal Rules of Civil Procedure allows for the modification of scheduling orders for good cause and with the judge's consent. USCS Fed Rules Civ Proc R 16.

3. Good cause exists in this case because the Plaintiff faces immediate and irreparable harm if the response time is not shortened. The harm includes the permanent loss of a specific job opportunity and the inability to obtain timely relief from the Court.

4. The Plaintiff has acted diligently in seeking relief and has provided sufficient justification for the expedited timeline.

**WHEREFORE,** Plaintiff respectfully requests that this Court:

1. Grant this Ex Parte Application to Shorten Time for Response to the Motion for Reconsideration;

2. Order that any opposing party file their response to the Motion for Reconsideration no later than **4:00** p.m. on **Wednesday, October 22, 2025**; and

3. Grant such other and further relief as the Court deems just and proper.

Executed on October 20, 2025, at Lancaster, California.

**JAIME MELENDEZ** Plaintiff, In Propria Persona

Dated this 20th day of October, 2025.

Jaime Melendez

EX PARTE APPLICATION FOR ORDER SHORTENING TIME FOR RESPONSE TO MOTION FOR RECONSIDERATION - 2

1  Jaime Melendez, PRO SE
   44206 16th St E
2  Lancaster, CA. 93535
   323-537-3636
3  JMelendez3000@Gmail.com

4  **UNITED STATES DISTRICT COURT**

5  **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

6

7  JAIME MELENDEZ,                          Case No.: 2:25-CV-09814-FMO-PVCx

8          Plaintiff,

9  vs.                                      **EMERGENCY MOTION FOR**
                                            **RECONSIDERATION OF ORDER OF**
10 DEPARTMENT OF HOMELAND SECURITY, ET AL,  **DISMISSAL AND FOR IMMEDIATE RULING ON**
                                            **PENDING APPLICATION FOR TEMPORARY**
11         Defendant                        **RESTRAINING ORDER**

12

13

14         [FRCP 60(b); L.R. 7-18]

15         COMES NOW, Plaintiff Jaime Melendez, in propria persona, pursuant to Rule 60(b) of the

16 Federal Rules of Civil Procedure, and hereby respectfully moves this Court to reconsider its Order of October 16,

17 2025, dismissing Plaintiff's claims [Dkt. No. 13]. This motion is based on the grounds that the Court's prior ruling

18 contained clear legal error, and on the basis of new facts not previously before the Court, namely that the

19 administrative forum to which the Court directed Plaintiff is closed, rendering the required administrative remedy

20 unavailable and futile. For these reasons, relief from the Court's order is justified to prevent manifest injustice.

21         **MEMORANDUM OF POINTS AND AUTHORITIES**

22         **I. LEGAL BASIS FOR RECONSIDERATION**

23         Rule 60(b) permits relief from a final judgment or order for reasons including mistake, newly

24 discovered evidence, or any other reason that justifies relief. Plaintiff asserts that the Court's dismissal was based on

25 a misapplication of the law and that new facts make compliance with the Court's order impossible, warranting

26 reconsideration to prevent manifest injustice.

27         **II. ARGUMENT**

28 EMERGENCY MOTION FOR RECONSIDERATION OF ORDER OF DISMISSAL AND FOR IMMEDIATE
   RULING ON PENDING APPLICATION FOR TEMPORARY RESTRAINING ORDER - 1

**A. New Facts Demonstrate the Required Administrative Remedy is Unavailable and Futile.**

The Court's order dismissed this case on the grounds that Plaintiff must first exhaust his remedies before the Merit Systems Protection Board ("MSPB"). However, as a result of the federal government shutdown, the MSPB is currently non-operational. (Declaration of Jaime Melendez ["Melendez Decl."] ¶ 2, Ex. A). Exhaustion is not required where the administrative remedy is **"unavailable"** or would be **"futile."** *McCarthy v. Madigan*, 503 U.S. 140, 147 (1992). Requiring Plaintiff to seek relief from a closed agency is the definition of futility. Because there is "no other adequate remedy," this Court is the only available forum. 5 U.S.C. § 704.

**B. The Court Erred by Precluding Judicial Review of Procedural Due Process Violations.**

The Court dismissed the APA claim, finding that the CSRA provides the exclusive remedy for federal personnel actions. However, while courts generally lack jurisdiction to review the *merits* of security clearance determinations under *Dep't of the Navy v. Egan*, 484 U.S. 518 (1988), procedural challenges to the process are reviewable. *See Makky v. Chertoff*, 541 F.3d 205 (3d Cir. 2008).

The Ninth Circuit has recognized that federal courts retain jurisdiction to review constitutional claims, such as the denial of due process. The case of *Cheney v. DOJ*, 479 F.3d 1343 (Fed. Cir. 2007), highlights the importance of providing sufficient specificity in the reasons for a clearance denial to allow for a meaningful response. Here, ICE's vague allegation of "Dishonest Conduct," based solely on a nearly five-year-old polygraph result (see previously submitted exhibit B here, ICE's only communication with no information regarding appeal or opportunity to respond), failed to provide a meaningful opportunity to contest the determination, raising serious due process concerns. While the merits of the polygraph itself may be unreviewable, Plaintiff can and does challenge whether ICE followed its own regulations and provided the procedural fairness required under the law. *See Stehney v. Perry*, 101 F.3d 925 (3d Cir. 1996). The Court's dismissal based on the CSRA was clear error because it failed to analyze this established exception for the review of procedural and constitutional violations.

**C. The Court Erred by Dismissing the Title VII Claim Without Considering the Ratification of an Arbitrary Barrier to Employment.**

The Court dismissed the Title VII claim, finding the ratification theory was not actionable. This conclusion is contrary to Ninth Circuit precedent. An employer violates Title VII when it knowingly relies on a third party's arbitrary process to deny employment. The Ninth Circuit has held that an employer **"may not use a third-**

EMERGENCY MOTION FOR RECONSIDERATION OF ORDER OF DISMISSAL AND FOR IMMEDIATE RULING ON PENDING APPLICATION FOR TEMPORARY RESTRAINING ORDER - 2

1    **party contractor to erect an arbitrary and discriminatory barrier to employment.**" *EEOC v. BNSF Railway*

2    *Co.*, 902 F.3d 916, 923 (9th Cir. 2018). Plaintiff alleges ICE's decision was arbitrary under the APA. When the

3    Corporate Defendants were put on notice of this arbitrary barrier and refused to take any corrective action, they

4    ratified it as their own, committing an unlawful employment practice.

5              **D. Please consider in addition to what has already been stated.**

6    1.  Plaintiff Jaime Melendez, an honorably discharged veteran, was offered a position as a Transportation

7        Officer with TransCor, Inc., contingent upon passing a background clearance adjudicated by U.S.

8        Immigration and Customs Enforcement (ICE).

9          2.  ICE issued a determination finding Plaintiff unsuitable for the position based on a failed polygraph

10            examination from January 2021, which was characterized as "Dishonest Conduct."

11              3.  Plaintiff contends that ICEs determination was arbitrary and capricious, as it failed to

12                 consider mitigating factors such as the recency of the conduct, Plaintiffs honorable

13                 military service, and his unblemished personal and professional record.

14          4. The Court dismissed Plaintiffs claims under the Administrative Procedure Act (APA) and  Title

15            VII of the Civil Rights Act, finding that the APA claim was precluded by the Civil Service

16            Reform Act (CSRA) and that the Title VII claim failed to state a valid legal theory.

17    1.  **Relief Under Rule 60(b):** Rule 60(b) permits relief from a final judgment or order for reasons including

18        mistake, newly discovered evidence, or any other reason justifying relief. Plaintiff asserts that the Courts

19        dismissal was based on a misapplication of the law, warranting reconsideration. USCS Fed Rules Civ Proc

20        R 60.

21    2.  **Judicial Review of Agency Actions:** Under 5 USCS 706, courts are authorized to set aside agency actions

22        that are arbitrary, capricious, or exceed statutory authority. ICEs determination was arbitrary and capricious

23        because it relied solely on a nearly five-year-old polygraph result without considering mandatory mitigating

24        factors under 5 C.F.R. 731.202(c). 5 USCS § 706.

25          3.  **Procedural Errors in Dismissal:** The Courts reliance on the CSRA to preclude the APA claim

26            was misplaced, as the CSRA does not provide an adequate remedy for non-federal employees

27

28    EMERGENCY MOTION FOR RECONSIDERATION OF ORDER OF DISMISSAL AND FOR IMMEDIATE
RULING ON PENDING APPLICATION FOR TEMPORARY RESTRAINING ORDER - 3

challenging suitability determinations. Additionally, the Title VII claim was improperly dismissed without fully considering the employers ratification of ICEs discriminatory actions.

4. **Violation of Constitutional Rights:** ICEs actions violated Plaintiffs due process rights by failing to provide a fair and rational basis for the unsuitability determination, thereby exceeding its statutory authority under 5 USCS 706(2)(B) and (C). 5 USCS § 706.

**WHEREFORE,** for the foregoing reasons, Plaintiff respectfully requests that this Court:

1. **GRANT** this Motion for Reconsideration and **VACATE** its Order of Dismissal [Dkt. No. 13];

2. **REINSTATE** this action in its entirety; and

3. Upon reinstatement, **IMMEDIATELY CONSIDER AND RULE UPON** Plaintiff's original Application for a Temporary Restraining Order [Dkt. No. 4] due to the imminent and irreparable harm Plaintiff faces before the November 2, 2025 deadline.

Dated: October 20, 2025

**JAIME MELENDEZ** Plaintiff, In Propria Persona



EMERGENCY MOTION FOR RECONSIDERATION OF ORDER OF DISMISSAL AND FOR IMMEDIATE RULING ON PENDING APPLICATION FOR TEMPORARY RESTRAINING ORDER - 4

1  Jaime Melendez, PRO SE
   44206 16th St E
2  Lancaster, CA. 93535
   323-537-3636
3  JMelendez3000@Gmail.com

4              **UNITED STATES DISTRICT COURT**

5        **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

6

7  JAIME MELENDEZ,                          | Case No.: 2:25-CV-09814-FMO-PVCx

8         Plaintiff,

9  vs.                                       | **[PROPOSED] ORDER GRANTING PLAINTIFF'S
                                             | EX PARTE APPLICATION FOR ORDER
10 DEPARTMENT OF HOMELAND SECURITY, ET AL,  | SHORTENING TIME**

11        Defendant

12

13 The Court, having considered Plaintiff Jaime Melendez's Ex Parte Application for an Order Shortening Time to

14 Hear his Motion for Reconsideration of the Court's Order of Dismissal, and finding good cause therefor, hereby

15 ORDERS as follows:

16    1.  Plaintiff's Ex Parte Application for an Order Shortening Time is GRANTED.

17    2.  Any opposition by Defendants to Plaintiff's Motion for Reconsideration shall be filed with the Court and

18        served on Plaintiff no later than 4:00 p.m. on Wednesday, October 22, 2025.

19    3.  No reply brief shall be filed.

20    4.  Upon the filing of the opposition brief(s), the Court will take the Motion for Reconsideration under

21        submission on the papers and will issue a ruling in due course. No hearing will be held.

22 **IT IS SO ORDERED.**

23 **Dated:** _____

24

25

26

27

28 [PROPOSED] ORDER GRANTING PLAINTIFF'S EX PARTE APPLICATION FOR ORDER SHORTENING
   TIME - 1

Executed on October 20, 2025, at Lancaster, California.

**JAIME MELENDEZ** Plaintiff, In Propria Persona

Dated this 20th day of October, 2025.

_____
Jaime Melendez

[PROPOSED] ORDER GRANTING PLAINTIFF'S EX PARTE APPLICATION FOR ORDER SHORTENING TIME - 2

1  Jaime Melendez, PRO SE
   44206 16th St E
2  Lancaster, CA. 93535
   323-537-3636
3  JMelendez3000@Gmail.com

4              **UNITED STATES DISTRICT COURT**

5       **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

6

7  JAIME MELENDEZ,                    | Case No.: 2:25-CV-09814-FMO-PVCx

8          Plaintiff,

9  vs.                                | **DECLARATION OF JAIME MELENDEZ IN**
                                        **SUPPORT OF MOTION FOR**
10 DEPARTMENT OF HOMELAND SECURITY, ET AL, | **RECONSIDERATION**

11         Defendant

12

13 I, Jaime Melendez, declare as follows:

14   1.  I am the Plaintiff in this action. I have personal knowledge of the facts stated in this declaration and, if

15       called as a witness, I could and would competently testify to them.

16   2.  On October 17, 2025, in an attempt to comply with this Court's Order of Dismissal [Dkt. No. 13], I visited

17       the official public website of the U.S. Merit Systems Protection Board (MSPB) at www.mspb.gov to begin

18       the appeal process the Court directed me to. The website displayed a prominent notice stating that, due to a

19       lapse in federal appropriations, the agency is closed and all operations are suspended. A true and correct

20       copy of the screenshot from the MSPB website is attached hereto as **Exhibit A.**

21   3.  My prospective employment with Defendant TransCor, Inc. has a training start date of November 2, 2025.

22       Due to the MSPB's closure, it is impossible for me to seek, let alone receive, an administrative remedy

23       before this job opportunity is permanently lost.

24 I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

25

26

27

28

DECLARATION OF JAIME MELENDEZ IN SUPPORT OF MOTION FOR RECONSIDERATION - 1

1

2    Executed on October 20, 2025, at Lancaster, California.

3    **JAIME MELENDEZ** Plaintiff, In Propria Persona

4

5    Dated this 20th day of October, 2025.

6

7                    Jaime Melendez

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF JAIME MELENDEZ IN SUPPORT OF MOTION FOR RECONSIDERATION - 2

# EXHIBIT A

# U.S. MERIT SYSTEMS PROTECTION BOARD

Contact: Zachary Kurz
202-653-7200
TDD/Videophone Users:
Please Call Via Relay

FOR IMMEDIATE RELEASE
October 1, 2025

## STATUS OF THE U.S. MERIT SYSTEMS PROTECTION BOARD
## DURING A PARTIAL GOVERNMENT SHUTDOWN

Due to the partial shutdown of the federal government effective at midnight, Tuesday, September 30, 2025, the U.S. Merit Systems Protection Board (MSPB or Board) has ceased all operations. This means that the processing of all appeals and other pleadings is suspended, regardless of whether such matters are pending in a Regional or Field Office, before the full Board in Washington, DC, or before an administrative law judge. Most personnel are not available in any MSPB office to answer inquiries during the entirety of a shutdown. **MSPB's e-Appeal system also is not available for the duration of the shutdown but will be reactivated once MSPB reopens.**

MSPB understands that this situation requires adjusting certain deadlines and other processing requirements in many appeals. Therefore, all filing and processing deadlines will be extended by the number of calendar days MSPB is shut down. This extension applies to all deadlines before MSPB, including those at the initial appeal and petition for review levels. Because the extension is automatic, parties are not required to show good cause and should not request an extension. This automatic extension does not apply, however, to any deadlines that passed *before* the date of the shutdown.

Further, all hearings or other matters scheduled with an administrative judge or administrative law judge during the shutdown will be canceled and rescheduled, as necessary, once MSPB reopens.

If you have any questions about this policy, please contact the Office of the Clerk of the Board or the appropriate MSPB Regional or Field Office after the shutdown ends. Telephone and e-mail addresses are located on the Agency Contact Center of MSPB's website (www.mspb.gov).

The U.S. Merit Systems Protection Board (MSPB) is an independent, quasi-judicial agency whose mission is to protect the Merit System Principles and promote an effective Federal workforce free of Prohibited Personnel Practices.

**U.S. Merit Systems Protection Board, 1615 M Street, NW, Washington, DC 20419**



*Office of Professional Responsibility*

**U.S. Department of Homeland Security**
4050 Alpha Road, Suite 1200
Farmers Branch, TX 75244



U.S. Immigration
and Customs
Enforcement

October 2, 2025

Jaime Melendez
42301 Alicante Street
Quartz Hill, CA 93536

Dear Jaime Melendez:

This letter is in reference to your application to work for the U.S. Department of Homeland Security (DHS), U.S. Immigration and Customs Enforcement (ICE) as a Transportation Officer.

After review of relevant information, issues were revealed which were serious enough to find you unsuitable for the above referenced position due to the following:

> *Dishonest Conduct: Results from your Law Enforcement Applicant Polygraph Examination administered by U.S. Customs and Border Protection on or about January 8, 2021, indicated Significant Response (Failed), which is an indication of deception.*

The issues we have identified indicate your character or conduct may have an adverse impact on the integrity or efficiency of the service. The determination to find you unfit has been made in accordance with 5 C.F.R. Part 731 and it is a final decision that is not subject to further appeal.

Sincerely,

For MICHAEL E JOHNSON
*Digitally signed by MICHAEL E JOHNSON*
*Date: 2025.10.02 08:54:32 -05'00'*

Carlos R. Okey
Section Chief
Personnel Security Division

1  Jaime Melendez, PRO SE
   44206 16th St E
2  Lancaster, CA. 93535
   323-537-3636
3  JMelendez3000@Gmail.com

4            **UNITED STATES DISTRICT COURT**

5      **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

6

7  JAIME MELENDEZ,                      | Case No.: 2:25-CV-09814-FMO-PVCx

8            Plaintiff,

9  vs.                                   | **CERTIFICATE OF SERVICE OF EX PARTE**
                                          | **APPLICATION AND MOTION FOR**
10 DEPARTMENT OF HOMELAND SECURITY, ET AL, | **RECONSIDERATION**

11           Defendant

12

13 I, Jaime Melendez, hereby certify that on October 20, 2025, a complete copy of the following documents:

14   1.  **Ex Parte Application for Order Shortening Time to Hear Motion for Reconsideration**

15   2.  **[Proposed] Order Granting Ex Parte Application**

16   3.  **Motion for Reconsideration of Order of Dismissal**

17   4.  **Declaration of Jaime Melendez in Support of Motion for Reconsideration**, with Exhibit A and B

18       attached thereto

19   5.  **Personal Statement and Declaration of Jaime Melendez in Support of Motions**

20

21       were served on the following defendants as follows:

22           **For Federal Defendants:** Service will be made by electronic mail to the Civil Rights Unit, U.S.

23 Attorney's Office, Central District of California at **Email:** USACAC.CV-CivilRights@usdoj.gov.

24           Service will also be made by personal delivery to the office of the U.S. Attorney at **300 N. Los**

25 **Angeles Street, Suite 7516, Los Angeles, CA 90012**.

26           **For Corporate Defendants:** Service will be made by electronic mail to Randall Milks, Mary Ann

27 Jackson, and Curtis Sullivan, Legal Department, TransCor, Inc. / CoreCivic, Inc., at **Email:**

28 randall.milks@transcor.com, maryann.jackson@transcor.com and curits.sullivan@transcor.com
   CERTIFICATE OF SERVICE OF EX PARTE APPLICATION AND MOTION FOR RECONSIDERATION - 1

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on October 20, 2025, at Lancaster, California.

**JAIME MELENDEZ** Plaintiff, In Propria Persona

Dated this 20th day of October, 2025.

Jaime Melendez

CERTIFICATE OF SERVICE OF EX PARTE APPLICATION AND MOTION FOR RECONSIDERATION - 2

1  Jaime Melendez, PRO SE
   44206 16th St E
2  Lancaster, CA. 93535
   323-537-3636
3  JMelendez3000@Gmail.com

4

5

6                    UNITED STATES DISTRICT COURT

7         CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

8

9

10

11

12  JAIME MELENDEZ,                        Case No.: 2:25-CV-09814-FMO-PVCx

13          Plaintiff,

14  vs.                                    PERSONAL STATEMENT AND DECLARATION
                                           OF JAIME MELENDEZ IN SUPPORT OF
15  DEPARTMENT OF HOMELAND SECURITY, ET AL,  MOTIONS

16          Defendant

17

18

19          To the Judge Ruling on my case:

20

21      I am a husband and a father of four. I submit this personal statement to the Court to explain the severe and

22  irreparable harm my family and I are suffering as a result of the Defendants' actions.

23

24      I have spent my entire adult life in service. I served eight years in the military as a Military Police Officer,

25  including an honorable tour in Iraq. I have dedicated my education to public service, earning degrees in

26  Criminal Justice and Public Administration. I have always lived by a code of conduct, and I have never

27  been in trouble with the law.

28

PERSONAL STATEMENT AND DECLARATION OF JAIME MELENDEZ IN SUPPORT OF MOTIONS – 1

When I was offered the Transportation Officer position with TransCor, it was more than just a job. It was a unique opportunity to provide for my family with a stable career close to our home. After a long and difficult period for my family, this job represented hope and a return to the stability that I have worked my entire life to build.

This past year has been the most difficult of our lives. My family endured an almost unimaginable series of crises. Through it all, we held together, praying for a new beginning. This job was that new beginning.

To have that hope taken away, based on a bureaucratic misinterpretation of a nearly five-year-old, unreliable test, has been devastating. To be labeled as having engaged in "Dishonest Conduct"—a label that goes against everything I have stood for in my military and civilian life—is not just wrong, it is deeply wounding to my character and reputation.

The harm I face is not something money can fix later. The training for this specific job begins on November 2, 2025. If I miss that date, the opportunity is lost forever. My family's chance to recover and rebuild from a year of trauma will be stolen by a decision that is not just legally flawed, but profoundly unjust.

I have tried everything in my power to resolve this directly. I have pleaded with the agency and with the company's senior management, only to be ignored or told that nothing could be done. The Court is now my only hope.

I respectfully ask the Court to look beyond the procedural arguments and see the real and immediate human cost of this arbitrary decision. I am asking for a fair chance to take the job I earned, to provide for my family, and to restore the stability and honor that this flawed process has taken from me.

PERSONAL STATEMENT AND DECLARATION OF JAIME MELENDEZ IN SUPPORT OF MOTIONS - 2

1    I declare under penalty of perjury under the laws of the United States that the foregoing is true and

2    correct.

3

4       Executed on October 20, 2025, at

5

6                                                    _____
                                                     Jaime Melendez
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PERSONAL STATEMENT AND DECLARATION OF JAIME MELENDEZ IN SUPPORT OF MOTIONS - 3

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

Jaime Melendez

PLAINTIFF/PETITIONER

V.

Department of Homeland Security et al.,

DEFENDANT/RESPONDENT

CASE NUMBER

2:25-CV-09814-FMO-PVCx

**REQUEST TO PROCEED IN FORMA PAUPERIS WITH DECLARATION IN SUPPORT**

I, Jaime Melendez _____ declare under penalty of perjury, that the foregoing is true and correct; that I am the petitioner/plaintiff in the above entitled case; that in support of my motion to proceed without being required to prepay fees, costs or give security therefore, I state that because of my poverty I am unable to pay the costs of said proceedings or to give security therefore and that I am entitled to redress.

I further declare under penalty of perjury that the responses which I have made to the questions and instructions below are true, correct and complete.

1. Are you currently employed?  ☐ Yes  ☒ No

   a. If the answer is yes, state the amount of your salary or wages per month, and give the name and address of your employer: _____

   b. If the answer is no, state the date of last employment and the amount of the salary and wages per month which you received. 02/02/2025

2. Have you received, *within the past twelve months*, any money from any of the following sources?

   | | | |
   |---|---|---|
   | Public benefits? | ☒ Yes | ☐ No |
   | Business, profession or form of self-employment? | ☐ Yes | ☒ No |
   | Rent payments, interest or dividends? | ☐ Yes | ☒ No |
   | Pensions, annuities or life insurance payments? | ☐ Yes | ☒ No |
   | Gifts or inheritances? | ☐ Yes | ☒ No |
   | Any other income (other than listed above)? | ☐ Yes | ☒ No |
   | Loans? | ☐ Yes | ☒ No |
   | Any other income (other than listed above)? | ☐ Yes | ☒ No |

   If the answer to any of the above is yes, describe such source of money and state the amount received from each source during the past twelve (12) months: Food Stamps and Aid in the amount of $2,100.00 monthly

3. Do you own any cash, or do you have money in a checking or savings account? (include any funds in prison accounts, if applicable)  ☐ Yes  ☒ No

If the answer is yes, identify each account and separately state the amount of money in each account for each of the *six (6) months* prior to the date of this declaration.  Not Applicable

4. Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property (excluding ordinary household furnishings and clothing)?  ☒ Yes  ☐ No

If you answer is yes, describe the property and state its approximate value:  A 2014 Ford F-150 valued at $5,498.00

5. In what year did you last file an Income Tax Return?  2023

Approximately how much income did your last return reflect?  $15,000.00

6. List the persons who are dependent upon you for support, state your relationship to those persons, and indicate how much you contribute toward their support:  4 Minor Biological Children (JM,JM,LM,LM), and Spouse I contribute 100% towards spouses and children support.

7. Estimate your average monthly expenses below:

| Housing | | Credit Cards | |
|---|---|---|---|
| Transportation | | Child Care | |
| Food | $600.00 | Insurance | |
| Medical | | Loans | $1,000.00 |
| Utilities | $600.00 | Other | |

California
_____
State

Los Angeles County
_____
County (or City)

I, Jaime Melendez _____ declare under penalty of perjury that the foregoing is true and correct. **Executed on:**

10-20-2025
_____
Date

Jaime N. Oendy
_____
Plaintiff (Signature)

1 | Jaime Melendez, PRO SE
44206 16ᵗʰ St E
2 | Lancaster, CA. 93535
323-537-3636
3 | JMelendez3000@Gmail.com

4 | **UNITED STATES DISTRICT COURT**

5 | **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

6

7 | JAIME MELENDEZ,  | Case No.: 2:25-CV-09814-FMO-PVCx

8 | Plaintiff,

9 | vs. | **APPLICATION FOR EMERGENCY TEMPORARY RESTRAINING ORDER**

10 | DEPARTMENT OF HOMELAND SECURITY, ET AL,

11 | Defendant

12

13 | **Introduction**

14

15

16 | COMES NOW, Plaintiff Jaime Melendez, by and through the undersigned counsel, pursuant to Rule 65 of the

17 | Federal Rules of Civil Procedure, and hereby respectfully moves this Court for an Emergency Temporary

18 | Restraining Order (TRO) to prevent the loss of a unique job opportunity scheduled to begin on November 2, 2025.

19 | This application is based on the grounds that the unsuitability determination by U.S. Immigration and Customs

20 | Enforcement (ICE) was arbitrary, capricious, and in violation of the Administrative Procedure Act (APA), and that

21 | Plaintiff will suffer immediate and irreparable harm if relief is not granted. 5 USCS § 706, USCS Fed Rules Civ

22 | Proc R 65.

23

24

25 | **Factual Background**

26

27

28

APPLICATION FOR EMERGENCY TEMPORARY RESTRAINING ORDER - 1

1. Plaintiff Jaime Melendez, an honorably discharged veteran of the United States military, was offered a position as a Transportation Officer with TransCor, Inc., contingent upon passing a background clearance adjudicated by ICE.

2. On October 2, 2025, ICE issued a determination finding Plaintiff unsuitable for the position based on a failed polygraph examination from January 2021, which was characterized as "Dishonest Conduct."

3. Plaintiff contends that ICE's determination was arbitrary and capricious, as it failed to consider mitigating factors such as the recency of the conduct, Plaintiff's honorable military service, and his unblemished personal and professional record.

4. Plaintiff's job training is scheduled to begin on November 2, 2025, and without immediate relief, Plaintiff will lose this unique job opportunity, causing irreparable harm.

**Legal Basis**

1. **Likelihood of Success on the Merits**: Under 5 USCS 706, courts are authorized to set aside agency actions that are arbitrary, capricious, or exceed statutory authority. ICE's determination was arbitrary and capricious because it relied solely on a nearly five-year-old polygraph result without considering mandatory mitigating factors under 5 C.F.R. 731.202(c) 5 USCS § 706.

2. **Irreparable Harm**: Plaintiff faces the permanent loss of a specific job opportunity, which constitutes irreparable harm. The training for the position is scheduled to begin on November 2, 2025, and the job will not be held open.

3. **Balance of Equities**: The harm to Plaintiff—loss of a career and livelihood—is catastrophic, while the harm to Defendants is minimal. The Federal Defendants are merely being asked to temporarily pause a flawed decision, and the Corporate Defendants are being asked to reinstate a conditional offer of employment.

4. **Public Interest**: The public has a strong interest in ensuring that federal agencies act rationally and in accordance with their own regulations. Granting this injunction serves the public interest by upholding the rule of law and preventing arbitrary decision-making.

WHEREFORE, Plaintiff respectfully requests that this Court:

1.  Issue a Temporary Restraining Order compelling Defendants to hold ICE's unsuitability determination in abeyance and reinstate Plaintiff's conditional offer of employment;

2.  Order Defendants to allow Plaintiff to begin job training on November 2, 2025, subject to all other standard hiring requirements;

3.  Set a hearing on Plaintiff's Motion for a Preliminary Injunction at the earliest possible date; and

4.  Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: October 20, 2025

**JAIME MELENDEZ** Plaintiff, In Propria Persona

Executed on October 20, 2025, at Lancaster, California.

**JAIME MELENDEZ** Plaintiff, In Propria Persona

Dated this 20th day of October, 2025.

_____

Jaime Melendez

APPLICATION FOR EMERGENCY TEMPORARY RESTRAINING ORDER - 3

1  Jaime Melendez, PRO SE
44206 16th St E
2  Lancaster, CA. 93535
323-537-3636
3  JMelendez3000@Gmail.com

4  **UNITED STATES DISTRICT COURT**

5  **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

6

7  JAIME MELENDEZ,                          Case No.: 2:25-CV-09814-FMO-PVCx

8        Plaintiff,

9  vs.                                      **[PROPOSED] TEMPORARY RESTRAINING ORDER**

10 DEPARTMENT OF HOMELAND SECURITY, ET AL,

11       Defendant

12

13 The Court, having considered Plaintiff Jaime Melendez's ex parte Application for a Temporary Restraining Order,

14 the supporting Memorandum of Points and Authorities, the Declaration of Jaime Melendez and the exhibits attached

15 thereto, and the Complaint on file in this action, and finding that Plaintiff is likely to succeed on the merits and will

16 suffer immediate and irreparable harm in the form of a lost job opportunity if relief is not granted, hereby ORDERS

17 as follows:

18    1. Defendant Department of Homeland Security and Defendant U.S. Immigration and Customs Enforcement

19       (collectively, "Federal Defendants") are hereby ORDERED to immediately hold in abeyance their October

20       2, 2025 unsuitability determination regarding Plaintiff Jaime Melendez. This determination shall have no

21       force or effect pending this Court's hearing and ruling on Plaintiff's Motion for a Preliminary Injunction.

22    2. Federal Defendants are ORDERED to immediately communicate to Defendants TransCor, Inc. and

23       CoreCivic, Inc. (collectively, "Corporate Defendants") that the October 2, 2025 unsuitability determination

24       is held in abeyance and does not currently stand as a barrier to Plaintiff's employment.

25    3. Corporate Defendants are hereby ORDERED to reinstate their conditional offer of employment to Plaintiff

26       and permit him to begin the training for the Transportation Officer position on November 2, 2025, subject

27       to all other standard hiring requirements.

28

[PROPOSED] TEMPORARY RESTRAINING ORDER - 1

4. This Order shall remain in full force and effect until the date of the hearing on Plaintiff's Motion for a Preliminary Injunction, or until further order of this Court.

5. Given Plaintiff's indigent status, the requirement of a bond under FRCP 65(c) is waived.

6. A hearing on Plaintiff's Order to Show Cause Re: Preliminary Injunction is hereby set for

_____, 2025, at **:** ___.m. in Courtroom _____ of the United States District Courthouse, 350 West 1st Street, Los Angeles, California.

**IT IS SO ORDERED.**

Dated: _____

Executed on October 20, 2025, at Lancaster, California.

**JAIME MELENDEZ** Plaintiff, In Propria Persona

Dated this 20th day of October, 2025.

_____
Jaime Melendez

[PROPOSED] TEMPORARY RESTRAINING ORDER - 2

# EXHIBIT D

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.   2:25-cv-09814 FMO (PVC)                                    Date: October 21, 2025

Title      Jaime Melendez v. Department of Homeland Security, et al.

Present: The Honorable:   **Fernando M. Olguin, United States District Judge**

| Vanessa Figueroa | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

## Proceedings (In Chambers): Order Denying Motions for Reconsideration [Dkt. Nos. 15, 20]

On October 14, 2025, Plaintiff filed a Complaint and a Request to Proceed In Forma Pauperis ("IFP request"). (Dkt. Nos. 1, 3.) The action was based on the withdrawal of an employment offer to Plaintiff as a transportation officer for United States Immigration and Customs Enforcement ("ICE"). (Dkt. No. 1 at 2.) Plaintiff had been offered the job by a private corporation, which in turn had a contract with the federal government. (*Id.* at 1, 2.) The job was conditioned upon Plaintiff passing a background clearance. (*Id.* at 2.) The offer was rescinded after ICE had found Plaintiff "unsuitable" for the position based on "Dishonest Conduct," specifically, Plaintiff's failure to pass a polygraph examination in 2021. (*Id.*) The Complaint raised two claims: (1) violation of the Administrative Procedure Act ("APA") by federal agencies, and (2) violation of Title VII of the Civil Rights Act by the private corporations for ratifying the federal agencies' unlawful actions. (*Id.* at 3.)

On October 16, 2025, the Court denied the IFP request, dismissed the Complaint without leave to amend, and dismissed the action without prejudice. (Dkt. No. 13.) The Court found that it had no jurisdiction to review federal personnel decision under the APA and that Plaintiff's remedy, if any, was before the Merit Systems Protection Board ("Board"). (*Id.*) The Court also found that Plaintiff had no cognizable legal theory of ratification against the private corporations under Title VII. (*Id.*)

Now pending are Plaintiff's motions for reconsideration, filed on October 17, 2025, and on October 20, 2025. (Dkt. Nos. 15, 20.) The motions raise three arguments. First, Plaintiff argues that he cannot raise his claim before the Board due to the shutdown of the federal government. (Dkt. No. 15 at 1-2; Dkt. No. 20 at 2.) Second, Plaintiff argues that he has a cognizable Title VII claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No.  2:25-cv-09814 FMO (PVC)                                Date: October 21, 2025

Title     Jaime Melendez v. Department of Homeland Security, et al.

(Dkt. No. 15 at 2-3; Dkt. No. 20 at 2-3.)  Third, Plaintiff argues that his has a cognizable claim for a violation of procedural due process. (Dkt. No. 20 at 2.)

Plaintiff's motions are brought under Federal Rule of Civil Procedure 60(b) and the Central District's Local Rule 7-18. (Dkt. No. 20 at 1.)  "Rule 60(b) provides for reconsideration only upon a showing of (1) mistake, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) a void judgment; (5) a satisfied or discharged judgment; or (6) extraordinary circumstances which would justify relief." *School District No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (quotation marks omitted).  Under Local Rule 7-18, a motion for reconsideration must show: (a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or (b) the emergence of new material facts or a change of law occurring after the Order was entered, or (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered.  Plaintiff has not shown that relief is warranted.

First, Plaintiff's argument that he cannot raise his personnel claim before the Board, due to the government shutdown, does not mean he may raise the claim before a District Court.  As previously explained to Plaintiff, his exclusive remedy for a federal personnel action arises from the Civil Service Reform Act of 1978 ("CSRA"). (Dkt. No. 13.)  Thus, "even where it provides no means by which a federal employee can challenge an improper personnel action, the CSRA precludes resolution of the employee's claims in federal court." *Chiang v. Gonzales*, 2006 WL 8449284, at *7 (C.D. Cal. May 9, 2006) (citing cases).  "In *Veit v. Heckler*, 746 F.2d 508 (9th Cir.1984), [the Ninth Circuit] held that the general judicial review provisions of the APA never confer jurisdiction to review federal personnel actions." *Blue v. Widnall*, 162 F.3d 541, 545 (9th Cir. 1998).

Second, Plaintiff's argument that he has a cognizable Title VII claim against the private corporate Defendants fails to show that Plaintiff has stated a claim.  As support, Plaintiff cites a Ninth Circuit opinion, *Equal Employment Opportunity Commission v. BNSF Railway Company*, 902 F.3d 916, 923 (9th Cir. 2018), for the alleged proposition that an employer "may not use a third-party contractor to erect an arbitrary and discriminatory barrier to employment." (Dkt. No. 15 at 2.)  Plaintiff has mischaracterized that opinion.  The Court's review of the *BNSF* opinion reveals no language to the effect that an employer "may not use a third-party contractor to erect an arbitrary and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No.  2:25-cv-09814 FMO (PVC)                    Date: October 21, 2025

Title      Jaime Melendez v. Department of Homeland Security, et al.

discriminatory barrier to employment." Instead, the "key question" in *BNSF*, which was a case under the American With Disabilities Act, was "whether [an employer] was entitled to condition [an applicant's] continuation through the hiring process on [the applicant] providing an MRI at his own cost," which the Ninth Circuit answered in the negative. *BNSF*, 902 F.3d at 924, 928. Plaintiff's claim has nothing to do with the Americans with Disabilities Act or the payment of his own costs as part of the hiring process. Thus, Plaintiff's reliance on the opinion is improper.

Third, Plaintiff's allegation of a new claim, based on a violation of procedural due process, does not warrant the reopening of this action. In the first place, it is improper for Plaintiff to raise the claim for the first time in a motion for reconsideration. *See Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (motion for reconsideration may not be used to raise arguments for the first time when they reasonably could have been raised earlier in the litigation). Even if the procedural due process claim had been properly raised, it would fail. Because the CSRA is the exclusive remedy, it "preempts . . . suits for constitutional violations arising from governmental personnel actions." *Russell v. United States Dept. of the Army*, 191 F.3d 1016, 1020 (9th Cir. 1999); *see also Fuller v. Johnson*, 107 F. Supp. 3d 1161, 1170 (W.D. Wash. 2015) (CSRA preempts procedural due process claim). Moreover, Plaintiff had no property interest in his selection to the job, contingent on his successful completion of a background check, that was protected by due process. *See Dorfmont v. Brown*, 913 F.2d 1399, 1403 (9th Cir. 1990) ("There is . . . no protected property interest in the clearance or in the job requiring such a clearance."); *see also McKinney v. District of Columbia*, 142 F.4th 784, 794 (D.C. Cir. 2025) (no procedural due process claim from a an applicant who had failed a background check because the "job offers that [he] received did not – indeed, could not – guarantee that he ultimately would be hired, and he therefore had no claim of entitlement and no constitutionally protected property interest").

In sum, Plaintiff's motions for reconsideration are denied. (Dkt. Nos. 15, 20.) Other pending motions are denied as moot. (Dkt. Nos. 19, 23.)

IT IS SO ORDERED.

|                          | 00:00 |
| ------------------------ | ----- |
| **Initials of Preparer** | vdr   |